[Civ. No. 9822.   Third Dist.   June 14, 1960.]

NOTCHEL BIRDSONG, Appellant, v. AMY M. WELCH, Respondent.

Rawlins Coffman and Noel L. Watkins for Appellant.

James G. Ford for Respondent.

SCHOTTKY, J.—On November 10, 1958, Notchel Birdsong and Amy M. Welch executed an agreement entitled "AGREE-MENT TO ENTER INTO LEASE." This agreement stated the parties desired to enter a 99-year lease of certain real property owned by Amy Welch and that the lease should provide "for the Lessee making improvements by filling certain portion of the property; Lessee to have possession on or before December 1, 1958, with rental to commence December 1, 1958, at Sixty Dollars ($60) per month; the rental to be increased to One Hundred Dollars ($100) per month when Lessee has filled at the south end of the property to a point approximately 200 feet North of the South line to the extent that said filled area is usable; said lease further to provide for the Lessee's filling the remainder of the property to be usable for sub-leasing and for the rental then to be increased by one-half of the net proceeds from such sub-leasing; providing that all

expense of filling shall be borne by Lessee and that such filling is subject to the ability of Lessee to get gravel out of Reeds Creek; further providing that all taxes and assessments of all kinds to be paid by the parties equally; . . ."

The final two paragraphs of the agreement provided:

"WHEREAS, there are various details to be worked out between the parties including an accurate description of the property and the title situation and provisions relative to special arrangements in the event of the death of either party;

"Now, THEREFORE, IT IS AGREED by and between the parties that they will forthwith proceed to arrive at a definite understanding on the points which are left open, but in the meantime the Lessee shall have immediate possession of the said premises, and that the Lessor will lease to the Lessee and the Lessee will lease from the Lessor the said premises upon the general terms aforesaid and that a written lease will be executed within ninety (90) days of the date hereof or sooner, if possible, and that regardless of the execution of a written lease the Lessee shall be protected in his interest in and to said property in accordance with the terms set forth in the introductory paragraphs hereof. Failure to arrive at any determination or understanding relative to any points not specifically covered herein shall not affect the validity of this agreement to enter into a lease and in any event a lease shall be made upon the terms herein specified."

The parties were unable to reach an agreement on the remaining issues and Birdsong commenced an action in declaratory relief to determine the rights of himself and Amy M. Welch under said written agreement and seeking to quiet title to a 99-year lease under said agreement.

The trial court found that said written instrument did not contain the essential terms of a lease and was merely an agreement to negotiate additional terms acceptable to both parties, but that the parties had been unable to agree upon such terms; that respondent notified appellant on February 16, 1959, that further negotiations were futile. The court further found that appellant entered upon such property on or about December 1, 1958, as the agreement provided that he might; and that appellant occupied such property as a month-to-month tenant and that such month-to-month tenancy terminated on March 18, 1959.

From said findings the court concluded that the agreement did not require respondent to enter into a lease with appel-

lant unless the terms of such lease were agreeable to respondent; that appellant had no rights under the agreement after the 16th day of February, 1959; that respondent's title should be quieted against appellant and that the month-to-month tenancy of appellant terminated on March 18, 1959; that appellant had no further right to occupy said property under the terms of that agreement after said date.

Judgment was entered in accordance with said findings and plaintiff has appealed therefrom.

Appellant contends: (1) That the agreement contained all the essential elements of a lease and was a binding agreement and therefore the judgment was erroneous; and (2) that the trial court's determination that a month-to-month tenancy existed and that it was terminated was erroneous because it was outside the scope of the issues as framed by the pleadings or litigated at the trial.

The principal question to be determined is whether or not the agreement of November 10, 1958, the agreement to enter into a lease, was a binding agreement or whether or not the parties intended to be bound only when a formal lease was executed. This is essentially a question of fact. (See Corbin on Contracts, § 29; accord *McKeon* v. *Giusto,* 44 Cal. 2d 153 [280 P.2d 782].) "When a finding of fact is attacked on the ground that there is not any substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the finding." (*E. K. Wood Lumber Co.* v. *Higgins,* 54 Cal.2d 91 [4 Cal.Rptr. 523, 351 P.2d 795].)

After the parties signed the document, appellant Birdsong contacted his then attorney, Alfred Frazier, who wrote respondent a letter about the agreement. It read in part:

". . . I understand that you and Mr. Birdson[g] concluded that what was done with your respective interests after the death of either party would be left to each of you to determine by will or as you deem proper. . . .

"Mr. Birdsong tells me that you have had some conversation since the execution of the written agreement in which Mr. Birdsong has agreed that the lease shall provide for a rental of $100 per month beginning September 1, 1959 regardless of the actual amount of filling which has been done by Mr. Birdsong, but still subject to the proviso that he is able to get fill out of Reeds Creek; in other words, if he cannot get gravel out of Reeds Creek, the rental would not

be increased above the $60. Another modification authorized by Mr. Birdsong is the increase in rental to $4,000 per year beginning September 1, 1962, also provided that gravel from Reeds Creek is available to Mr. Birdsong without cost except for hauling; said rental to then continue until all of the property is filled in accordance with the understanding, and when it is so filled the rental would then be based on the amount of lease revenue as originally contemplated.

". . . Mr. Birdsong is anxious to have the final lease prepared and executed. . . ."

On January 2, 1959, Rawlins Coffman, appellant's present attorney, sent a lease which he had prepared to respondent's attorney. The accompanying letter read in part: "I believe that the provisions therein pretty much cover the requirements you set forth in your letter of December 3, 1958." (This refers to a letter in which certain suggestions, including subleases, minimum rental for the portion of the property not used by appellant in his business, and a time limit for the completion of certain improvements, were made as to the lease provisions.)

The lease prepared by Mr. Coffman contained provisions covering such matters and also went much further. For example, it contained a provision for subordination of the lessee's interest in case loans were made for improvements. The original agreement contemplated that the property would be subleased. The property is commercial property located within the city of Red Bluff. It faces United States Highway 99-W. The negotiations between the parties indicate that they were aware that improvements might be made requiring loans and the question of subordination of loans was of vital importance in a lease for the term contemplated. The question was not answered in the original agreement. It specifically stated that there were various details to be worked out between the parties. These provisions were the subject of negotiation. From the history of the negotiations and the submission of draft leases containing many provisions not covered in the original agreement, we believe that the trial court could properly find the original agreement was not intended to be a binding agreement, but merely a document to serve as a basis of negotiation which required that additional terms had to be agreed upon before any lease was entered into. While this court might have determined that the original agreement was a binding document, we cannot say that the

determination of the trial court is not supported by substantial evidence.

Appellant contends further that the court erred in finding that appellant's month-to-month tenancy terminated on March 18, 1959. There is merit in this contention. Appellant contends that this determination is based on findings and conclusions outside the scope of the issues raised by the pleadings or litigated at the trial. ■ It is proper in an action for declaratory relief for the court to grant any relief consistent with the evidence and the issues embraced by the pleadings. (*Knox* v. *Wolfe,* 73 Cal.App.2d 494 [167 P.2d 3].)

■ There is also authority that in an action for declaratory relief the rights of the parties are to be determined upon the facts found and are not limited by the issues joined or by the claims of counsel. (*Stueck* v. *G. C. Murphy Co.,* 107 Conn. 656 [142 A. 301]; Borchard, Declaratory Judgments, 2d ed., p. 238.) But in order for the issue to be determined there must be evidence directed to the issue. (See *Hannula* v. *Hacienda Homes,* 34 Cal.2d 442 [211 P.2d 302, 19 A.L.R.2d 1268].) ■ In the instant case the pleadings did not raise the issue of whether or not the respondent had terminated the tenancy. The only evidence on the issue was an exhibit which was introduced by appellant. This was entitled, "Thirty Day Notice Terminating Tenancy and Withdrawal of Offer to Lease." This document was relevant on the issue of whether or not a dispute existed between the parties, and while it was also relevant on the issue of termination of tenancy, we do not believe that either party considered the question of termination of the tenancy to be in issue. Under such circumstances we believe it was improper for the trial court to find on the issue.

The judgment is modified by striking that portion declaring the appellant's month-to-month tenancy was terminated effective March 18, 1959, and ordering appellant to vacate immediately. In all other respects the judgment is affirmed. Each party to bear his or her own costs on appeal.

Van Dyke, P. J., and Peek, J., concurred.

A petition for a rehearing was denied July 8, 1960, and appellant's petition for a hearing by the Supreme Court was denied August 10, 1960.