[Civ. No. 6766. Fourth Dist. Aug. 9, 1962.]

HAIG C. MERIGAN et al., Plaintiffs and Appellants, v. WILLIAM J. BAUER et al., Defendants and Respondents.

Procopio, Price, Cory & Fisher and John H. Barrett for Plaintiffs and Appellants.

George Benedict for Defendants and Respondents.

618

CONLEY, J.*—The plaintiffs, Haig C. Merigan, Joann Merigan, his wife, and J. M. Investments, Inc., a corporation (referred to hereinafter as Merigan), appeal from a decree in a suit for declaratory judgment against the defendants and respondents, William J. Bauer, Mildred L. Bauer, his wife, and Cajon Investment Co., a corporation (hereinafter referred to as Bauer), on the basic ground that the trial court failed to find on all of the issues tendered by the pleadings and rendered a judgment which is incomplete and inadequate. The suit was based on a request to determine the meaning and effect of a portion of an agreement entered into between the parties on the 21st day of July, 1960, by which they attempted finally and conclusively to settle their respective rights and liabilities growing out of numerous joint ventures and other business relationships which had previously existed between them.

There is no attempt to rescind the agreement, and it is concededly binding upon the parties. By its early provisions, Merigan agrees to sell and Bauer to buy all of the Merigans' right, title and interest in the M & B Development Co. and in a certain rest home. The agreement continues with the provisions involved in this case:

''Bauer agrees to assume all known debts and encumbrances existing against said properties, and agrees to hold MERIGAN harmless from any liability arising from said indebtedness.

''It is agreed between the parties however, that with reference to the attorneys fees of the law office of WHITE, FROELICH AND PETERSON, that BAUER may dispute said charges. In the event BAUER is required to pay the sum of $6,500.00 or any lesser sum, MERIGAN agrees to pay the sum of $1,000.00 as his contribution towards said fee or settlement, on demand. BAUER agrees to hold MERIGAN harmless from any and all other liability to said law firm, which is unsettled at this date, and which arises from services rend[e]red by said law firm in connection with the Rest Home, Casa Blanca, and the bankruptcy relating thereto.''

White, Froelich and Peterson, the law firm referred to, had been Merigan's attorneys and had performed certain services for him in his individual capacity; in addition, the firm had served the joint venture of Merigan and Bauer, particularly in connection with the bankruptcy of the rest home, and the parties at the time of the execution of the agreement conceded

---

*Assigned by Chairman of Judicial Council.

that certain sums were due for services rendered to the contracting parties as distinguished from services which had previously been performed for Merigan personally. The figure of $6,500 was mentioned in the agreement as the approximate sum which was claimed to be then due to the law firm from the joint venture; the exact amount was unsatisfactory to Bauer, and he desired the right to attempt to induce the attorneys to lower their charges for services rendered the joint venture. Unknown to Bauer, Merigan had executed a promissory note in favor of one of the partners of the legal firm in the sum of $10,449.79 in payment of all services previously performed by them for Merigan personally and for the joint venture. The note had been endorsed and assigned with recourse to the Bank of America, and the bank brought suit on the note against Merigan. According to a statement contained in appellant's opening brief, the action resulted, after the trial of the instant suit, in a summary judgment against Merigan for the full amount of the note and interest. This fact is not denied by respondent, but respondent correctly observes that as the record on appeal does not show this latter fact, and no motion has been filed by appellant for an order to produce additional evidence in this court, we cannot take notice of the alleged termination of that action. However, Merigan's liability on the note is not questioned, and we can assume, for the purpose of this appeal, that Merigan is responsible for the full amount of the note to the Bank of America; consequently, the law firm in effect has been fully paid for its services to the joint venture through the instrumentality of the note.

What, then, is the result of the fact that the existence of the note was not disclosed by Merigan to Bauer? Any right on the part of Bauer to contest the amount of the charges against the joint venture was lost and in fact was unavailable to him at the time the agreement was made. This fact might well have afforded a ground for the rescission of the whole contract; but there has been no attempt on the part of Bauer to rescind. He contends that because of the execution of the promissory note and the consequent deprivation of his opportunity to contest the charges against the joint venture, he does not owe any amount to Merigan. On the other hand, Merigan argues that the liability of Bauer to Merigan approximates $6,500, or more accurately, the reasonable value of the legal services rendered by the law firm to the joint venture, less the $1,000 which he agreed to pay to Bauer.

 A declaratory relief suit is in the nature of an equi-

table proceeding, and it is incumbent upon us to apply equitable principles to the issue. While Merigan acted improperly in concealing the fact that he had already signed a promissory note covering the entire amount of the claim of the law firm, it would be inequitable to relieve Bauer of all duty owed under the agreement. As it is now impossible for Bauer to contest the amount of the charges made by the law firm against the joint venture, equity will adopt the concept of what was reasonably due to the law firm by the joint venture as the measure of Bauer's liability to Merigan. While Merigan may or may not have exceptional gifts as a trader and compromiser, it would be inequitable to assume that he could rightfully reduce the claim of the law firm below the reasonable value of whatever services they rendered to the joint venture.

The prayer of the complaint in the action is ". . . that Declaratory Judgment be rendered and entered declaring and adjudicating the respective rights and duties of the plaintiffs and defendants under the above set forth provisions of said agreement," and the prayer of the defendants' answer is to the same effect. The court has not completed its duty in the matter. In the findings of fact it is recited that Merigan and Bauer were engaged in various joint ventures; that misunderstandings and disputes brought about negotiations which resulted in the agreement ". . . settling their rights as to those matters particularly set forth in the agreement"; that before the execution of the agreement the law firm of White, Froelich and Peterson had made charges for legal services rendered in connection with certain of the joint dealings of the parties; that Merigan, on March 19, 1960, ". . . prior to the execution of the agreement in question, and without knowledge on the part of the defendants, executed his personal promissory note to Byron F. White, of the law firm of White, Froelich and Peterson in the amount of $10,449.79, which promissory note shows a maturity date of November 14, 1960." The findings continue with the statement that the note was negotiated for value and with recourse to the Bank of America, National Trust and Savings Association, which, at the time of the trial, was the holder thereof; that on the date of the execution of the agreement and in the protracted negotiations which led to its execution Merigan did not disclose the fact of the existence of the note; that the note was given partly in payment of the attorneys' fees properly chargeable against the joint venture and partly in payment of personal attorneys' fees of Merigan; that under the agreement, Bauer had the right

to dispute the charges of the law firm and that the execution of the promissory note ". . . placed it beyond the power of defendant William J. Bauer to dispute said attorneys' fees charges." It is further stated in the findings: "The aforesaid agreement is clear and concise on its face," and that there exists a dispute between the parties as to their rights and duties.

The conclusions of law are as follows:

"I. The aforesaid agreement is clear and concise on its face.

"II. Defendants, or any of them, did not assume or undertake to pay, and are not liable under the terms of the agreement to pay, the promissory note executed by plaintiff Haig C. Merigan on March 19, 1960 in the amount of $10,449.79, or any part thereof."

The judgment, following the conclusions of law, provides:

"IT IS HEREBY ORDERED AND DECREED AS FOLLOWS:

"Under the written agreement of July 21, 1960, Defendants, or any of them, did not assume or undertake to pay, and are not liable under the terms of said agreement to pay, the promissory note executed by plaintiff Haig C. Merigan on March 19, 1960 in the amount of $10,449.79, or any part thereof."

No one has contended that any of the defendants owed any direct obligation on the note for $10,449.79. The judgment, therefore, decides something which was not in controversy and entirely fails to deal with the rights and duties of the parties with respect to their agreement.

██ In *American Enterprise, Inc.* v. *Van Winkle,* 39 Cal. 2d 210, 219 [246 P.2d 935], it is said: "In an action for declaratory relief, the proper function of the court is to make a full and complete declaration, disposing of all questions of rights, status or other legal relations encountered in construing the instrument before it."

 *Osborne* v. *Security Co.,* 155 Cal.App.2d 201, 204 [318 P.2d 94], states: "It is the duty of the court hearing an action for declaratory relief to make a complete determination of the controversy," and points out the prejudicial nature of a failure to find upon a material issue in any case, citing *Parker* v. *Shell Oil Co.,* 29 Cal.2d 503, 512 [175 P.2d 838], and *De Burgh* v. *De Burgh,* 39 Cal.2d 858, 873 [250 P.2d 598]. (See also *Abbott* v. *City of San Diego,* 165 Cal.App.2d 511, 525 [332 P.2d 324].)

The case must be reversed; upon retrial the court should ascertain the reasonable value of the legal services with accompanying legitimate legal expenses, if any, rendered and expended by the law firm ". . . in connection with the Rest Home, Casa Blanca, and the bankruptcy relating thereto," and should order payment by defendants to plaintiffs of said amount, less $1,000.

Appellants in their brief ask this court to make new findings. We cannot accede to the request, first, because the proposed findings would necessitate the taking of evidence with respect to matters which occurred both before and after trial, and no application has been made for the taking of further evidence pursuant to rule 23(b) of California Rules of Court,* and secondly, because the granting of appellants' request would necessitate the disposition by this court of matters as to which the trial court did not make any appropriate findings. The permission granted to an appellate court by the Constitution (art. VI, § 4¾) and section 956a of the Code of Civil Procedure does not contemplate the elimination of the differing functions of a trial and appellate court. We will not retry the case with respect to pivotal issues concerning which the trial court made no findings. (*Larson* v. *Thoresen*, 36 Cal.2d 666, 670 [226 P.2d 571]; *Estate of Pendell*, 216 Cal. 384, 387 [14 P.2d 506]; 4 Cal.Jur.2d, Appeal and Error, § 633, pp. 522-523.) We must remand the case for trial in the court below.

The judgment is reversed.

Griffin, P. J., and Shepard, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied October 2, 1962.

---

*Formerly Rules on Appeal, rule 23(b).