[Civ. No. 26549. Second Dist., Div. One. Dec. 10, 1962.]

MORTGAGE FINANCE CORPORATION, Plaintiff and Respondent, v. JOHN D. HOWARD et al., Defendants and Appellants.

John L. Mace for Defendants and Appellants.

Hastings, Blanchard & Hastings and Robert G. Blanchard for Plaintiff and Respondent.

LILLIE, J.—Defendants appeal from a judgment for plaintiff in its action to recover the unpaid principal balance of a promissory note guaranteed by them. They contend that as a matter of law the trial court should have reached a contrary determination.

The material facts are without dispute. On December 26, 1959, Pohl-Der Incorporated, a California corporation, executed and delivered to plaintiff its promissory note in the principal amount of $75,000, principal payable in monthly installments of $1,000 commencing October 26, 1960. The note matured as to any remaining unpaid principal on December 26, 1964. On August 12, 1960, defendants guaranteed payment of the principal of Pohl-Der's note; the guaranty agreement is set forth below.[1]

---

[1]FOR VALUE RECEIVED, the undersigned guarantees that the principal of the note which is the subject of this guaranty will be paid in due course according to the terms of said note. If default in payment on account of principal of said note shall occur at any time, and such default shall continue for a period of *Fifteen (15)* days, then, upon demand, the undersigned will immediately pay to MORTGAGE FINANCE CORPORATION, in cash, a sum equal to the then unpaid principal balance on said note. The undersigned further guarantees and agrees to pay all expenses of collection of the amount which is subject to this guaranty, including attorney's fees incurred in enforcing this guaranty. The holder of said note may grant renewals or extensions of time of payment of all of said note or of any installments accruing under the terms thereof, at or after maturity, and may expressly or impliedly agree to any change, substitution, withdrawal, decrease or increase or other alteration of any collaterals or property, directly or indirectly securing said note or any extensions or renewals thereof, and said holder may otherwise deal with any maker, or any successor in interest of any maker in any collateral or property directly or indirectly securing said note or any extensions or renewals thereof, or with any endorser or coguarantor as it may elect, without in any way affecting the liability hereunder of the undersigned. Notice of acceptance of this guaranty as well as all demands, presentments, notices of protest, and notices of every kind or nature, including those of any action or non-action on the part of any maker, the holder or anyone else, are hereby waived. Upon any default, the holder may, at its option, proceed directly and at once, without notice, against the undersigned to collect and recover the full amount hereby guaranteed, or any portion thereof, without proceeding against any maker or any other person, or foreclosing upon, selling, or otherwise disposing of or collecting or applying any property, real or personal, securing said note or any renewals or extensions thereof.

On February 26, 1961, the principal installment then due was not paid. The maker's default having continued for 15 days, on March 14 plaintiff demanded of all defendants immediate payment of the unpaid principal balance of the note. The following day (March 15) Pohl-Der tendered, and plaintiff accepted, the delinquent February installment. On April 14, 1961, there then being no default in the payment of monthly installments, plaintiff instituted the present action to recover the entire balance of principal, alleged to be $71,000. The trial court found against the answer's affirmative defense that by the acceptance from Pohl-Der of the sum of $1,000, as above related, plaintiff waived any default under the contract of guaranty; it further found that the interim acceptance of $6,000 in monthly installments from defendants Howard and Greene, as successors in interest to Pohl-Der,[2] was likewise not a waiver of plaintiff's rights in the circumstances.

The distinction between sureties and guarantors having been abolished (Civ. Code, § 2787), the problem is one in the field of suretyship and governed by the statutes found under "Title 13, Suretyship." (Civ. Code, § 2787 et seq.) The principal argument revolves around the applicability of one or all of the statutes now to be quoted. Section 2809 provides that "The obligation of a surety must be neither larger in amount nor in other respects more burdensome than that of the principal; and if in its terms it exceeds it, it is reducible in proportion to the principal obligation." By section 2819 it is provided that "A surety is exonerated, except so far as he may be indemnified by the principal, if by any act of the creditor, without the consent of the surety the original obligation of the principal is altered in any respect, or the remedies or rights of the creditor against the principal,

The undersigned hereby waives the right to have the property of any maker or any other person first applied to the discharge of the indebtedness guaranteed hereby, and waives the pleading of any statute of limitations as a defense to the obligation hereunder. In the event this guaranty is signed by more than one person, the obligation hereunder of all and each of the parties signing it is and shall be joint and several. This guaranty is assignable with the obligation which it guarantees and shall insure to the benefit of and bind the heirs, legatees, devisees, administrators, executors, successors and assigns of the holder and the undersigned.

The note which is the subject of this guaranty is a certain promissory note dated December 26, 1959, in the principal amount of $75,000.00 executed by *POHL-DER INCORPORATED, a California corporation.*

[2]Said defendants, it appears, had become owners of the real property which was subject to a deed of trust securing the subject promissory note.

in respect thereto, in any way impaired or suspended." Finally, section 2822 declares that "The acceptance, by a creditor, of anything in partial satisfaction of an obligation, reduces the obligation of a surety thereof, in the same measure as that of the principal, but does not otherwise affect it."

The foregoing enactments restate collectively the common-law rule that the liability of a surety is, as a general rule, coextensive with that of the principal. It must be neither larger in amount nor in other respects more burdensome than that of the principal. The decisive question here is whether the extension of time for payment placed the principal in a more favored position than that of defendants-sureties; in other words, whether a material change in the status of the parties, without the consent of the sureties, was thereby accomplished. ■■■ "It is too well settled both by code enactment and by judicial determination to need any citations, that where there is a material change of the status of the parties to a bond, affecting their substantial rights, without the knowledge or consent of the surety, the surety is relieved from any obligation thereunder. [Citations.]" *(People* v. *Fidelity etc. Co. of Maryland,* 28 Cal.App.2d 325, 332 [82 P.2d 495].)

■■■ Decisional law supports defendants' claim that an extension of time by the creditor to the principal constitutes a material change in the parties' status. *(Braun* v. *Crew,* 183 Cal. 728 [192 P. 531]; *Brock* v. *Western Nat. Indem. Co.,* 132 Cal.App.2d 10 [281 P.2d 571]; *Occidental Life Ins. Co.* v. *McCracken,* 19 Cal.App.2d 239 [65 P.2d 130].) The result reached in *Braun* is rationalized with the declaration that "the surety is entitled to stand on the strict letter of the contract upon which he is liable and that any change therein made without his consent, by which the contract is altered so as to impair or suspend the right of the creditor to proceed to enforce payment, fully releases the surety." (P. 733.) The cases also hold that the question of the extent, if any, which the surety (or guarantor) sustains therefrom cannot be inquired into. "We are not required and under the law are not permitted to speculate whether the alteration benefits or injures the guarantor. It is enough that it is a material alteration of the terms of the guaranty. [Citations.]" *(McMannus* v. *Temple Estate Co.,* 10 Cal.App.2d 419, 421-422 [51 P.2d 1124].)

Plaintiff, however, relies on *Bloom* v. *Bender,* 48 Cal.2d 793 [313 P.2d 568], where it was determined that the re-

quirements of section 2809 are fully met if the surety's obligation, *when undertaken,* does not exceed the obligation of the principal, even though the parties' subsequent conduct may in some fashion relieve the principal from a part of his burden. But the provisions in the contract in *Bloom* are different from those at bar. Thus, the agreement there provided that the liability of the guarantor " 'shall not be affected by ... the acceptance of any settlement or composition offered by . . . [Midwest], either in liquidation, readjustment, receivership, bankruptcy or otherwise.' " As pointed out in the opinion (p. 801): "The above quoted provision plainly gives advance consent to the release of Midwest by means of an arrangement such as the composition agreement which was executed." In the present case, on the other hand, no advance consent was given by defendants to the granting of any renewals or extensions of time save *at or after maturity,* the agreement in pertinent part providing that "The holder of said note may grant renewals or extensions of time of payment of all of said note or of any installments accruing under the terms thereof, *at or after maturity* . . ." As contended by defendants, the above provisions and other features of the case clearly indicate that the purpose of the guaranty was to assure that plaintiff be paid monthly installments as they became due. Further indicating that plaintiff never sought repayment before maturity is a penalty clause in the subject promissory note for prepayment by the maker before the mature date.

Section 2837, Civil Code, requires that the instant surety contract be construed by the same rules as in the case of other contracts. Applying those rules (Civ. Code, §§ 1635-1662), the trial court had first to ascertain the intentions of the parties from the written instrument itself. As indicated earlier, the material facts are uncontroverted; furthermore, parol evidence was not introduced to interpret or otherwise construe the agreement in question. Under those circumstances, the trial court's construction is not binding and a reviewing court will determine its meaning as a matter of law. *(Stevenson* v. *County of San Diego,* 26 Cal.2d 842, 844 [161 P.2d 553].)

 We hold that that construction adopted by the trial court is erroneous and inequitable. It is argued by plaintiff that since the principal obligation is secured by a trust deed upon real estate, the object of the guarantee is to protect plaintiff against the sale procedures provided for under sec-

tions 2924 et seq. of the Civil Code, permitting the borrower to cure his default during the period necessary to complete the sale, and the delays incident to the principal's resort to the reinstatement privileges therein provided for. ''Such conduct,'' says plaintiff, ''while it will not, in the long run, deprive the lender of the money it has loaned, it is constant inconvenience and expense.'' The answer to that argument is that it is a pure assumption, wholly speculative and not supported by the terms of the agreement—there is nothing in the subject contract in regard to impairment of security. Plaintiff is simply seeking to have its cake and eat it too.

The judgment is reversed.

Wood, P. J., and Fourt, J., concurred.