[Civ. No. 11352. Third Dist. May 6, 1968.]

RALPH W. AMERSON, Plaintiff and Appellant, v. PAUL R. CHRISTMAN et al., Defendants and Appellants; DEPARTMENT OF VETERANS AFFAIRS, Defendant and Respondent.

RALPH W. AMERSON, Plaintiff and Appellant, v. PAUL R. CHRISTMAN, Defendant and Respondent.

(Consolidated Appeals.)

Ralph W. Amerson, in pro. per., and Frank K. Richardson for Plaintiff and Appellant.

Douglas C. Busath for Defendants, Respondents and Appellants.

. William Rathje and N. R. Samuelsen for Defendant and Respondent.

REGAN, Acting P. J.—These appeals arise out of a building construction contract. Defendant Christman agreed to construct a home for plaintiff Amerson for the sum of $24,594.92. Defendant Hartford Accident and Indemnity Company, hereinafter called ''Hartford,'' was Christman's surety under a performance bond. Defendant Department of Veterans' Affairs, hereinafter called ''Department,'' supplied financing in the sum of $14,000. The trial court awarded damages to Amerson against Christman and Hartford in the amount of $11,931.62.

This case involves four separate appeals. Amerson first appeals from the trial court's order sustaining Christman's demurrer without leave to amend in Action No. 134351, and dismissing the action. Secondly, he appeals from the trial court's judgment in Action No. 121514 insofar as it declares or adjudicates Amerson's rights and duties with respect to the Department. Thirdly, Amerson appeals from said judgment insofar as it adjudicates or denies his rights to additional compensatory relief against Christman and Hartford. Christman and Hartford also appeal from the judgment and the order denying their motion for a new trial.

Amerson contends that he was denied due process and equal protection of the laws under the Fourteenth Amendment to the United States Constitution in that:

(1) The trial court erred in dismissing his Action No. 134351, and in refusing to allow an amendment to complaint conforming to proof in Action No. 121514, thereby depriving plaintiff of a hearing on distinct and different causes of action;

(2) The trial court erred in finding no contractual breach on the part of Department and denying plaintiff relief where:

(a) Plaintiff duly performed all conditions of the basic agreements;

(b) Department made progress payments to Christman knowing that Christman had not duly performed and knowing of plaintiff's objections;

(c) Department, with due notice that Christman was in default and that Hartford would take no action to remedy the default, refused to provide funds and allow plaintiff to engage another building contractor pursuant to the contract or a stipulation of the parties;

(d) Department maintains it still has the right to charge plaintiff sums due under the contract even though plaintiff's right to possession has been delayed and defeated; and

(e) Plaintiff is barred from maintaining an action against Department either to recover his property or to be compensated for its wrongful taking.

(3) The trial court erred in not allowing damages for detriment incurred in addition to the extra cost (calculated in the year 1964) of constructing his home.

Christman and Hartford, on their appeals, contend as follows:

(1) There was a novation on February 17, 1961,[1] limiting any damages plaintiff might recover to the terms of the stipulation entered into on such date.

(2) Findings of fact and conclusions of law are defective and are insufficient to support the judgment.

### FACTS

Amerson was desirous of constructing a home on a lot he owned in the City of Sacramento pursuant to the provisions of the Veterans' Farm and Home Purchase Act of 1943. (Mil. & Vet. Code, § 984 et seq.) Under this act, there is a plan whereby the Department may finance the construction of

---

[1]Date of a stipulation entered into by all the parties prior to trial for the purpose of resolving the controversy.

improvements on a lot owned by a California veteran by giving financial aid and by making progress payments to a licensed contractor in installments as the work progresses.

In accordance with the statutory requirements for this plan (Mil. & Vet. Code, § 986.3), Amerson deposited with the Department plans and specifications prepared by an architect; a contract executed by Amerson and Christman, as the contractor, for the construction of improvements in accordance with the plans and specifications (calling for completion of the home within 120 days after commencement of work); and a performance bond executed by Christman and Hartford. The approved plans and specifications also included by reference a document entitled "Description of Materials" to be used in the construction.

Pursuant to the construction contract, Amerson agreed to pay Christman the sum of $24,594.92 for the completion of the improvements. Under the progress payment plan, where the contract cost of the proposed improvements exceeds the amount authorized by the department for financial aid, the veteran must deposit the cash difference in escrow before construction starts. Since the Department was willing to advance only $14,000 toward the cost of construction, funds of Amerson were deposited with the Department to make up the difference. On April 3, 1959, the Department and Amerson executed a "Building Agreement" wherein Department agreed to advance $14,000 and Amerson agreed to deposit in escrow $10,594.92 for the total construction cost.

Christman commenced construction on April 9, 1959. Thereafter, progress payments were made to Christman on April 27, May 25, and October 9, all in 1959. Each of such payments required the owner's approval and Amerson signed all three.

However, on the May 25 payment certificate, Amerson listed several exceptions to the materials being used. These defects included: (1) 2x12 support beams were standard grade rather than specified select structural grade; (2) exterior wall sheathing was interior-type plywood of C-D grade rather than specified exterior plywood of better grade; (3) lathing on exterior walls was installed stucco netting rather than specified metal lathe; (4) insulation was mineral wool foiled batts of 2-inch thickness rather than specified Fiberglass-cored foiled batts "compo 3/58"; and (5) drain tile was Orangeburg pipe rather than specified terra cotta.

On the October 9 payment certificate, Amerson crossed out the words signifying his approval and typed in: "See my letter addressed to Mr. M. A. Main on August 15, 1959, and

memoranda addressed to the contractor on September 28, 1959, and October 9, 1959.''

Amerson became disenchanted with the materials used in construction and the workmanship on or before May 15, 1959, and dispatched several letters to Christman, complaining of defects and pointing out deviations from the plans and specifications. The parties were unable to get together and sometime on or before June 12, 1959, Christman ceased work. On June 11, Amerson sent a letter to Christman advising him that he had breached the contract, and on June 17, he also advised Hartford that Christman was in default.

According to a settled statement made pursuant to rule 7, the Department did not regard Christman in default, would not make available money to a different contractor, declared it would be the sole judge of whether to make payments to Christman, that it would not allow Amerson to proceed with another contractor, and advised Amerson to get together with Christman and resolve their dispute.

Thereafter, at the suggestion of the Department, Amerson and Christman entered into negotiations in an attempt to resolve their differences. Most of these differences were resolved on or around August 11, 1959, by Christman agreeing to certain matters making some concessions. On August 15, Amerson sent to the Department (Attention of M. A. Main) a group of change orders approved by Amerson and Christman. In that August 15 letter, however, Amerson stated that it was agreed that he could ''proceed under provision 8 of the building construction contract without further notice (i.e., owner could declare contractor in default and hire another to do the job).

Around the middle of August work was commenced on the house, Christman correcting several matters not meeting contract specifications and Amerson acquiescing in the use of other materials below specifications.

Work continued intermittently until September 18 when a rain storm damaged much of the interior of the house. On September 28 Amerson sent a letter to Christman complaining of his failure to protect the interior of the house, and also set forth a lengthy list of other defects. On October 9, Amerson sent a supplementary letter to Christman setting forth additional defects. (These two letters, plus the one to Main, dated August 15, are the letters Amerson referred to when he struck out the words of approval on the certificate for progress payment dated October 9.)

Between October 9 and November 15, 1959, Amerson tried to contact Christman to no avail and saw no construction activity. Apparently, the Department's position had remained unchanged (i.e., Amerson must resolve his differences with Christman and he could not proceed through another contractor). Construction completely halted sometime around October 1, 1959.

On November 19, 1959, Amerson again wrote Christman advising him that he was in default under the building construction contract, and demanded the return of $4,918.98, the last progress payment made on October 9.

Two days earlier, on November 17, 1959, Amerson filed a complaint for declaratory relief (Action No. 121514), naming as defendants therein Christman, Hartford and the Department. In summary, Amerson sought a judgment declaring Christman to be in default, the surety to be without remedial rights, and the Department to be obligated to provide funds so that Amerson could proceed to completion of his house.

On February 17, 1961, when the cause came on for trial, all parties involved entered into a written stipulation which provided:

"It is hereby stipulated by the parties to the above-entitled action that plaintiff, Ralph W. Amerson, may proceed under terms of paragraph number 8 of the building construction contract between Amerson and Christman, the same being Exhibit 'A' attached to the complaint herein, as prayed for.

"Provided, however, that plaintiff, Ralph W. Amerson, shall select at his own expense, an architect of A.I.A. classification, and licensed by the State of California, who will supervise the completion of the work to be done under approved plans and specifications made a part of the aforesaid contract.

"And provided further, that said work shall be accomplished by a licensed contractor selected as follows:

"The architect shall select said contractor as the lowest bidder after submission of three or more competitive bids in general conformance to practices of A.I.A. members.

"It is stipulated that owner will waive the right to replacement of batten board and chicken wire with metal lathe.

"Any other outstanding differences between the owner and the contractor shall be resolved by said architect whose determination shall be final.

"Plaintiff may select any of the above-qualified type architects except John Carter, Grant Caywood, Carter Sparks and Donald Thaden.

"It is understood that the contractor hereinabove described to be selected by the architect, will file a lien waiver with the Department of Veterans Affairs prior to receipt of payment of funds. Performance and material and labor Bond Agreements shall remain in full force and effect. Likewise the original contract and agreements heretofore entered into for performance of said work shall remain in full force and effect."

Although the record is not entirely clear, apparently Amerson did not act upon the authority granted by this stipulation for several months. It finally appears that Amerson did select an architect sometime in the latter part of July of 1961, and the architect selected a contractor in August of that year.

On August 2, 1961, Amerson wrote the Department stating he had now selected an architect and requested detailed specifications from the Department as to everything which must be done in order to proceed with the completion of the house.

In the meantime, on June 6, 1961, three and one-half months after the stipulation, Christman wrote Amerson repudiating the stipulation since, in Christman's opinion, the delay had increased construction costs. On July 3, 1961, the Department wrote to Amerson expressing its dissatisfaction with the progress made on the construction of his house and closed its letter stating:

"The Department now insists that you take immediate and necessary steps to complete the construction of the home, same to be completed to our satisfaction within 90 days from date hereof. In the event same is not completed to our satisfaction by that time, the Department will cancel your contract per the terms of the Building Agreement."

This period expired on October 2, 1961, without construction having been completed.

Before this case (No. 121514) could be set for trial again, Amerson filed a second cause of action on December 8, 1961, for declaratory relief and to recover money. This action was numbered 134351 and named only Christman as a defendant. Amerson in this complaint sought damages from Christman for: (1) neglecting the maintenance and protection of the structure; (2) return of the third progress payment of $4,918.98; partial demolition and reconstruction necessitated by Christman's failure to correct defects; care and housing of his mother; lost rental; time, money and effort for his own housing and enforcement of the terms of the contract; and fraudulent representation.

On December 21, 1961, Christman demurred to the com-

plaint primarily on the basis that there was another cause of action pending between the parties for the same causes. On January 4, 1962, Amerson filed an amendment to his complaint in Action No. 134351. On February 19, 1962, the trial court sustained Christman's demurrer "as to all causes of action without leave to plaintiff to amend." The court ordered defendants' "complaint" dismissed and Amerson's first appeal is from this order. There was no final judgment of dismissal.

Action No. 121514 came on regularly for trial on October 30, 1962, before a court sitting without a jury, and was concluded on April 24, 1964, having been continued from time to time.

At the conclusion of the trial, Amerson moved the court for permission to file two amendments to his complaint to conform to proof. The first would have set forth each of the causes of action stated in Action No. 134351. The second would have amended the complaint to set forth a separate cause of action against the Department, including allegations that the Department had a duty to supervise construction and that the Department failed and refused to see that the contractor had complied with plans and specifications before making progress payments. Although the record is silent, apparently this permission was not granted.

In its opinion, the trial court declared that Christman did breach his contract. The court did not attempt to enumerate the particulars noting only that the testimony consumed several days; that he examined some 78 exhibits; that the evidence was conflicting; and that he resolved the conflict in plaintiff's favor. Damages were assessed against Christman and Hartford for $11,931.62. Accordingly, the court awarded judgment to Amerson against Christman and Hartford in said sum of $11,931.62.[2] It is this judgment from which Amerson has two appeals and Christman one.

Although the conclusions of law set forth that the Department is obligated in certain respects to Amerson, there is no judgment either for or against the Department in the record. The trial judge's opinion, however, does state that plaintiff's proposed amendment relative to the Department's duty to supervise construction is unsupported by the evidence. The opinion also states that the proposed amendment charging the Department with delivering funds from escrow with knowl-

[2]The major findings can be summarized: (1) Christman failed to supply sufficient material or workmen for expeditious progress of the construction; (2) Amerson duly performed all the conditions of his contract; (3) Hartford failed and refused to remedy Christman's default.

edge of the contractor's failure to comply is likewise unsupported by the evidence.

*1. Amerson's appeal from trial court's order sustaining Christman's demurrer in Action No. 135351 and dismissing the action.*

This action for declaratory relief and money damages was filed on December 8, 1961, against Christman alone. On December 21, Christman demurred on the basis that there was another cause of action pending. On January 4, 1962, Amerson filed an amendment to this complaint. On February 19, the trial court sustained the demurrer and dismissed the action. This appeal is from the trial court's order and not from a subsequent final judgment of dismissal. That order is not appealable, and this appeal is therefore dismissed. (*Curnutt* v. *Holk*, 203 Cal.App.2d 6, 7 [21 Cal.Rptr. 224]; *Jeffers* v. *Screen Extras Guild, Inc.*, 107 Cal.App.2d 253, 254 [237 P.2d 51].)

*2. Amerson's appeal from the trial court's judgment in Action No. 121514 insofar as it declares or adjudicates Amerson's rights and duties with respect to the Department.*

Here, Amerson appears to be arguing he has multiple causes of action against the Department since: (a) Department, with due notice of Christman's breach and over plaintiff's disapproval, unlawfully disbursed funds to Christman; (b) Department, with due notice of the default of Christman and Hartford, unlawfully denied Amerson authority to engage another contractor pursuant to Paragraph 8 of the building construction contract; (c) Department, having entered into a stipulation with Amerson and the other defendant, unlawfully refused to provide Amerson with construction funds; (d) Department, by its inequitable actions, should not now be immune from suit. Amerson relies upon the Fourteenth Amendment to the federal Constitution and equitable considerations as his authority.

The trial court, however, made findings which are adverse to the assumptions made by plaintiff herein. The trial court found that:

It was not true that Amerson had fully performed all the conditions of his agreement with Department; it was not true that Department had refused to make available funds for the completion of the construction; and the Department has performed or offered to perform and discharge its respective obligations and duties under the terms of the stipulation.

In its opinion, the trial court makes the following remarks;

"The amendment to the complaint also charges the Department of Veterans Affairs with disbursing funds from the escrow with knowledge of the contractor's failure to comply and while he was in default, and with failing to supervise. This allegation is likewise unsupported by the evidence. The most that can be said with respect to the Department of Veterans Affairs authorizing the disbursement of funds after the alleged default of Christman, is that there was a dispute between the plaintiff and Christman regarding Christman's performance of which the Department of Veterans Affairs had notice. . . ."

Amerson, in effect, is arguing the sufficiency of the evidence. The rules applicable to an appeal based on insufficiency of the evidence are well settled, and were recently restated in *Green Trees Enterprises, Inc.* v. *Palm Springs Alpine Estates, Inc.*, 66 Cal.2d 782 at page 784 [59 Cal.Rptr. 141, 427 P.2d 805]:

■ "When a finding of fact is attacked on the ground that there is no substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the finding of fact. [Citations.]" A review of the record here discloses substantial support for the court's findings.

■ It should be noted that the court below did not render final judgment either for or against the Department, although it impliedly found for the Department and absolved it of all liability. "It has been held that when two or more defendants are sued and the judgment for plaintiffs runs against only one, it is necessarily in favor of the other." (*George* v. *Bekins Van & Storage Co.*, 83 Cal.App.2d 478, 482 [189 P.2d 301].) Thus the record sufficiently discloses a decision adverse to Amerson's contentions here under review.

*3. Amerson's appeal from the trial court's judgment in Action No. 121514 insofar as it declares or adjudicates or denies his rights to additional compensatory relief from Christman and Hartford.*

■ Amerson here contends that the trial court erred in refusing to grant permission to amend his complaint in accordance with proof.

At the conclusion of the trial, Amerson moved for authority to file amendments to conform to proof. In effect, Amerson sought to amend his complaint to incorporate each of the causes of action set forth in Action No. 134351. In this respect Amerson alleged that he suffered detriment from the breach in

addition to the sum awarded for the extra costs in 1964 of constructing the home.

The record does not disclose what action, if any, was taken on this motion or the disposition thereof, but we assume that the motion was denied inasmuch as the point is in issue on this appeal.

Before proceeding with Amerson's contentions in this regard, we note that Action No. 121514 was a complaint for declaratory relief brought against Christman, Hartford and the Department. In actions for declaratory relief, the court should attempt to do complete equity, resolving all questions actually involved in the case as between all of the respective parties. (*Dunlop* v. *Hersum Lbr. Co.*, 126 Cal.App.2d 815, 820 [273 P.2d 22].) ▇ "In an action for declaratory relief, the proper function of the court is to make a full and complete declaration, disposing of all questions of rights, status or other legal relations encountered in construing the instrument before it." (*American Enterprise, Inc.* v. *Van Winkle*, 39 Cal.2d 210, 219 [246 P.2d 935]; see Code Civ. Proc., § 1060.) It is the duty of the court hearing the action for declaratory relief to make a complete determination and disposition of the controversy. (*Merigan* v. *Bauer*, 206 Cal.App. 2d 616, 621 [23 Cal.Rptr. 872]; *Caffroy* v. *Fremlin*, 198 Cal. App.2d 176, 184 [17 Cal.Rptr. 668].) In view of these authorities the trial court had full and complete power to decide the case in all its aspects. The case was tried on this theory and the evidence was so given.

▇ A review of the evidence completely supports the trial court's finding of a breach of contract and ensuing damage. This finding of breach and the award of damages for completion of the improvements finds substantial record support and is now beyond attack. ▇ Moreover, the trial court properly fixed the date for determination of the damages as of April 1964, the date of termination of the trial. ▇ The measure of damages for breach by a contractor of a construction contract is the difference between the contract price and the price of completing the work the contractor had agreed to perform. (*Fairlane Estates, Inc.* v. *Carrico Constr. Co.*, 228 Cal.App.2d 65, 72 [39 Cal.Rptr. 35].) ▇ Since the breach caused the delay, we have no difficulty with the court's ruling that the costs of completion should be ascertained in accordance with 1964 price levels.

▇ Nevertheless, there was evidence which was introduced, and not controverted, indicating that Amerson was

entitled to additional relief for damages proximately caused by the breach. (See Civ. Code, § 3300.) This being so, and since the trial court impliedly refused to grant additional relief, the first question is whether the trial court erred in denying Amerson's motion to amend his complaint to conform to proof. We hold that the court did not err in denying said motion, for the court did receive evidence on this very issue. Thus, there was evidence in the record and before the court, and the court could have given additional relief. ■ When a case is tried as though the issues were before the court, any defect in pleadings is waived by the parties. (See *Freeman* v. *Gray-Cowan, Inc.*, 219 Cal. 85, 87 [25 P.2d 415]; cf. *Weidenmueller* v. *Stearns etc. Co.*, 128 Cal. 623, 625 [61 P. 374]. ■ Moreover, in an action for declaratory relief the rights of the parties are to be determined upon the facts found and are not limited by the issues joined or by claims of counsel. (*Birdsong* v. *Welch*, 181 Cal.App.2d 749, 754 [5 Cal. Rptr. 474].) ■ Thus, the amendment was properly denied as unnecessary.

■ This brings us then to the second question: Did the trial court err in refusing to award special damages in view of the record before it?

The record shows that Amerson introduced evidence on the subject of additional relief. For example, he testified as to damages incurred through the loss of the use of his house, the additional costs of caring for his mother and son, and various other items occasioned by the delay. Amerson did not waive his rights in this regard. In fact, he sought expressly to reserve these rights in the findings. The trial court, however, refused to award any additional relief and in effect purported to make a final judgment of all of the issues involved.

In failing to provide for additional relief in the judgment for declaratory relief, the trial court did not make a complete determination of the controversy based upon all the evidence in the record. (See *Merigan* v. *Bauer, supra*, 206 Cal.App.2d 616, 621.) As noted above, Amerson testified to special damages incurred from the breach of the contract. His testimony was uncontroverted.

Section 3300 of the Civil Code governs actions against contractors for damages where the contractor has breached the contract. (*Henderson* v. *Oakes-Waterman, Builders*, 44 Cal. App.2d 615 [112 P.2d 662].) Section 3300 of the Civil Code provides: "For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will

compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." Accordingly, the case must be returned to the trial court for an assessment of special damages with regard to the additional relief asked for which finds support in the record.

At this juncture we note the general rule that the liability of a surety is coextensive with that of the principal. *(Mortgage Finance Corp.* v. *Howard,* 210 Cal.App.2d 569, 572 [26 Cal.Rptr. 917]; see Civ. Code, § 2809.) Moreover, "[i]t is a general principle of suretyship law that while a surety cannot be held beyond the express terms of his contract, the contract is to be interpreted by the same rules used in construing other types of contracts, with a view towards effectuating the purposes for which the contract was designed." *(Bloom* v. *Bender,* 48 Cal.2d 793, 803 [313 P.2d 568]; see Civ. Code, § 2837.) "Thus, it is only after the meaning of the terms of the contract has been ascertained that the rule of *strictissimi juris* comes into operation." *(Bank of America* v. *Dowdy,* 186 Cal.App.2d 690, 693 [9 Cal.Rptr. 779].)

An examination of the performance bond reveals that Hartford was to be "held and firmly bound unto" Christman and Department in the sum of twenty-four thousand five hundred ninety-four and 92/100 dollars ($24,594.92) in the event Christman did not "truly keep and perform the covenants, conditions and agreements" in the construction contract. Christman breached the contract, and thus under the terms of the performance bond Hartford was obligated either to complete the contract or to make available "sufficient funds to pay the cost of completion less the balance of the contract price; but not exceeding, *including other costs and damages for which the Surety may be liable hereunder,* the amount set forth above." (Italics supplied.) We think that a fair reading of the terms of the bond indicates an intent to reimburse Amerson for damages consequentially caused by the contractor's breach and the ensuing construction delays. We therefore hold that Hartford is equally liable, along with Christman, for incidental damages proximately flowing from the breach (cf. *Gomez* v. *Scanlan,* 155 Cal. 528, 532 [102 P. 12]; *Dunne Inv. Co.* v. *Empire State Surety Co.,* 27 Cal.App. 208 [150 P. 405, 411]; *Callan* v. *Empire State Surety Co.,* 20 Cal.App. 483 [129 P. 978, 981]), the total amount of damages to be assessed, of course, not to exceed the amount specified in the bond. (See *Trumpler* v. *Cotton,* 109 Cal. 250, 256-257 [41 P. 1033].)

*4. Christman and Hartford's appeal from the judgment and order denying their motion for a new trial.*

 The order is not appealable and is therefore dismissed. (*Rodriguez* v. *Barnett,* 52 Cal.2d 154, 156 [338 P.2d 907].)

 Christman and Hartford argue that a novation occurred on February 17, 1961, the date the stipulation was entered into, and any damages Amerson might recover are limited to the terms of the stipulation.

A novation is the substitution of a new obligation for an existing one. (Civ. Code, § 1530.) It necessarily requires the extinguishment of the old contract. (*United States Gypsum Co.* v. *Snyder-Ashe Co.,* 139 Cal.App. 731, 733 [34 P.2d 767].) There is nothing here to show an extinguishment of the old contract; in fact, pursuant to the stipulation, Amerson was permitted to proceed pursuant to paragraph 8 of the building construction contract. Furthermore, Christman later expressly repudiated the stipulation. No further points raised · by defendants merit discussion.

The judgment below is affirmed save for the matter of further damages as to which the cause is remanded to the trial court with directions to enter further damages, if any, for additional relief against Christman and Hartford in accordance with applicable law and as the proof requires. Department of Veteran's Affairs is to recover its costs from Amerson. Amerson is to recover his costs from Christman and Hartford.

Van Dyke, J.,* and Sparks, J. pro tem.,† concurred.

A petition for a rehearing was denied June 3, 1968, and the petition of the plaintiff and appellant for a hearing by the Supreme Court was denied July 3, 1968.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

†Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.