565 So.2d 357 (1990)
The ARBOR CLUB OF BOCA RATON, INC., LTD., a Florida Limited Partnership, Appellant,
v.
OMEGA CONSTRUCTION COMPANY, INC., a Michigan Corporation, Trans-America Insurance Company, a California Corporation, Gerald Borduin, Individually, and Harold Deyoung, Individually, Appellees.
No. 88-3461.
District Court of Appeal of Florida, Fourth District.
July 18, 1990.
Rehearing Denied August 23, 1990.
*358 John Beranek of Aurell, Radey, Hinkle & Thomas, Tallahassee, and Boose, Casey, Ciklin, Lubitz, Marten, McBane & O'Connell, P.A., West Palm Beach, and Jeffrey W. Bracken of Loomis, Ewert, Ederer, Parsley, Davis & Cotting, Lansing, and Klein & Beranek, West Palm Beach (on the brief), for appellant.
Gary M. Stein of Rosenberg, Reisman & Stein, Miami, for appellee-Transamerica.
Alan C. Brandt, Jr., of Chappell & Brandt, Fort Lauderdale, and Paul L. Nelson of Tolley, Fisher & Verwys, Grand Rapids, for appellees-Omega Const. Co. and Harold Borduin.
DOWNEY, Judge.
This case arises out of a contract between The Arbor Club of Boca Raton, Inc., (Arbor) and Omega Construction Company (Omega), wherein Omega agreed to construct a large rental unit apartment complex for Arbor at a cost of $9,674,000. Pursuant to a contractual requirement, Omega furnished a performance bond for the full contract price issued by Transamerica Insurance Company (Transamerica), which bond incorporated the construction contract by reference.
This was a phased construction project that scheduled the completion date of each unit. Under the plan the initial units would be rented while other units were still in the process of construction. Omega fell behind schedule and eventually breached the contract and left the job. Arbor notified the surety, Transamerica, which, in due course, opted to furnish a contractor to complete the project. However, Transamerica refused to accept responsibility for Arbor's damages for delay that occurred both before and after the date of Omega's termination.
Suit was commenced by Arbor against both Omega and Transamerica. The latter moved for summary judgment on Arbor's claim for delay damages. During the hearing thereon, the trial judge indicated he believed that, as a matter of law, Arbor could not recover delay damages occurring prior to Omega's termination date. However, he was not sure enough of that conclusion to grant summary judgment, and thus denied the motion some three weeks prior to trial. The case went to trial on Arbor's complaint against the surety for damages it incurred as a result of the delays for which the contractor was at fault and for those delays allegedly caused by Transamerica after Omega's default. Transamerica denied liability on the ground that its bond did not contract to pay such damages. The trial court instructed the jury that Transamerica was not obligated under its contract to pay any delay damages caused by Omega, and the jury returned a verdict for Transamerica on the claim for delay caused by the surety after Omega's default. From the judgment entered on the jury verdict, Arbor has appealed and we reverse the judgment.
Generally speaking, the liability of a surety is coextensive with that of its principal. Nevertheless, the surety's liability for damages is limited by the undertaking of the bond. Fidelity & Deposit Co. of Maryland v. Sholtz, 123 Fla. 837, 168 So. 25 (1935). With regard to the rules of construction applicable to such contract this court held in Travelers Indemnity Company v. Mercer, 250 So.2d 283, 285 (Fla. 4th DCA 1971):
As a general proposition, contracts of suretyship are regarded as analogous to contracts of insurance in that the various rules of construction governing insurance policies are applicable; as to sureties who receive compensation their contracts are construed most strictly against them and in favor of the obligee. 30 Fla.Jur., Suretyship and Guaranty, § 11.
The performance bond involved here provides that "The condition of this obligation is such that, if contractor [Omega] shall promptly and faithfully perform said contract, then the obligation shall be null and void, otherwise it shall remain in full *359 force and effect." The bond also provides that the contract between Omega and Arbor "is by reference made a part hereof." The other relevant provisions of the contract are set forth in the margin.[1]
Arbor contends on appeal that the issue in this case has been resolved in its favor in our recent case of St. Paul Fire & Marine Insurance Company v. Woolley/Sweeney Hotel # 5, 545 So.2d 958 (Fla. 4th DCA), rev. denied, 553 So.2d 1166 (Fla. 1989), which expressly noted conflict with United States Fidelity & Guaranty Company v. Gulf Florida Development Corporation, 365 So.2d 748 (Fla. 1st DCA 1978). The Supreme Court of Florida denied review of that decision on October 26, 1989. Arbor also cites a number of cases that appear to support the recovery of delay damages under a performance bond. Transamerica argues that our Woolley/Sweeney case is wrong and it relies instead on Gulf Florida, as did the trial court. Furthermore, Transamerica contends that its liability depends upon the specific undertaking in the contract which limits its liability to completing the construction contract and the cost of curing any defective work by Omega.
In resolving this dichotomy, we must honor our own decision in Woolley/Sweeney. The condition of the bond in that case is the same as the bond in this case, and the question presented here was obviously raised therein since the court noted conflict with Gulf Florida.
Another case supporting reversal is Amerson v. Christman, 261 Cal. App.2d 811, 68 Cal. Rptr. 378 (1968), wherein the court considered whether the provisions of an identical bond covered delay damages, and held that it did. Citing the critical language of the bond, which it found created liability for such damages, that court said:
An examination of the performance bond reveals that Hartford was to be "held and firmly bound unto" Christman and Department in the sum of twenty-four thousand five hundred ninety-four and 92/100 dollars ($24,594.92) in the event Christman did not "truly keep and perform the covenants, conditions and agreements" in the construction contract. Christman breached the contract, and thus under the terms of the performance bond Hartford was obligated either to complete the contract or to make available "sufficient funds to pay the cost of completion less the balance of the contract price; but not exceeding, including other costs and damages for which the Surety may be liable hereunder, the amount set forth above." (Emphasis supplied.) We think that a fair reading of the terms of the bond indicates an intent to reimburse Amerson for damages consequentially caused by the contractor's breach and the ensuing construction delays.
68 Cal. Rptr. at 388. Other Florida cases appear to support this result. In School Board of Pinellas County v. St. Paul Fire & Marine Insurance Company, 449 So.2d 872 (Fla. 2d DCA), rev. denied, 458 So.2d 274 (Fla. 1984), the court noted that the bond involved incorporated by reference the provisions of the contract, which included the plans and specifications, and the bond was conditioned upon the contractor's faithful performance of the construction contract. In the light of that, the court held:
At the outset, we point out that St. Paul's performance bond must be interpreted in conjunction with the contract *360 between Biltmore and the School Board. This is so because the contract between the parties is, by reference, made a part of the bond. Thus, since the bond requires the contractor to "promptly and faithfully perform said contract," St. Paul, as surety, may be liable for the contractor's breach of a contractual provision.
449 So.2d at 873.
We should not conclude this discussion without acknowledging that there is persuasive authority to the contrary, i.e., that a performance bond like the present one is not intended to cover consequential damages, such as damages for delay. In a law review article on the subject, the author points out that, historically, performance bonds guarantee the completion of the bonded contract, and a surety thereon will generally pay no more than the reasonable cost of completion in the event of the contractor's default. The author notes that the bond usually requires that, if the contractor defaults, the surety will either step in and complete construction or pay the obligee the reasonable cost of completion, or some variation on that theme. Sobel, Owner Delay Damages Chargeable to Performance Bond Surety, 21 Cal.W.L.Rev. 128 (1984).
However, the author also recognizes that the prevailing trend is to enlarge and broaden the obligations of the surety under a performance bond. One of the cases analyzed by the author that would seem to demonstrate the broadening of coverage is Amerson v. Christman, 261 Cal. App.2d 811, 68 Cal. Rptr. 378 (1968), which we have relied on herein. The author's analysis of Amerson is interesting because he makes note of the pertinent language relied on in that bond to create coverage for delay damages, and that language is identical to the language in the bond in this case. He has this to say about the court's interpretation of said language:
To decide whether the surety should also be liable for delay damages the court made the following observations: First, it noted the old rule that the surety's liability is coextensive with its principal's. Next, it found that the bond incorporated the construction contract by reference, and that contract provided for timely performance. The court bolstered its conclusion by pointing to the following language in the bond: "Hartford is obligated to make available sufficient funds to pay the cost of completion less the balance of the contract price; but not exceeding, including other costs and damages for which the surety may be liable hereunder, the amount set forth above."
The court did not say why this language made the surety liable. It is obvious that the provision was intended to limit the surety's liability, not extend it. In any event, the court concluded that Hartford was "equally liable" with Christman for damages "consequentially caused by the contractor's breach," primarily damages for delay.
Sobel, Owner Delay Damages Chargeable to Performance Bond Surety, 21 Cal.W.L. Rev. 128, 137 (1984).
Finally, Transamerica contends that, if we reverse the judgment, we should grant a new trial so that it can adduce evidence in support of its defense to the claim for delay damages caused by Omega. Arbor, however, points out that Transamerica never pled any particular defense except that it was not liable for such damages, though it had every opportunity to do so. We, thus, agree with Arbor that a new trial is not indicated.
We reverse the judgment appealed from, once again noting conflict, as we did in St. Paul Fire & Marine Insurance Company v. Woolley/Sweeney Hotel # 5, 545 So.2d 958 (Fla. 4th DCA), rev. denied, 553 So.2d 1166 (Fla. 1989), and United States Fidelity & Guaranty Company v. Gulf Florida Development, 365 So.2d 748 (Fla. 1st DCA 1978), and remand the cause to the trial court with directions to enter judgment in favor of Arbor for the amount of delay damages proven at trial.
POLEN, J., and FRANK, RICHARD H., Associate Judge, concur.
NOTES
[1] Whenever Contractor shall be, and declared by Owner to be in default under the Contract, the Owner having performed Owner's obligations thereunder, the Surety may promptly remedy the default, or shall promptly

1) Complete the Contract in accordance with its terms and conditions, or
2) Obtain a bid or bids for completing the Contract in accordance with its terms and conditions, and upon determination by Surety of the lowest responsible bidder, or, if the Owner elects, upon determination by the Owner and the Surety jointly of the lowest responsible bidder, arrange for a contract between such bidder and Owner, and make available as Work progresses (even though there should be a default or a succession of defaults under the contract or contracts of completion arranged under this paragraph) sufficient funds to pay the cost of completion less the balance of the contract price, but not exceeding, including other costs and damages for which the Surety may be liable hereunder, the amount set forth in the first paragraph hereof.