EDGAR J. TAPPING, *Plaintiff in Error,* vs. H. D. McINTOSH and UNITED STATES FIDELITY AND GUARANTY COMPANY, a corporation, *Defendants in Error.*

140 So. 773.

En Banc.

Opinion filed April 13, 1932.

Petition for rehearing denied May 3, 1932.

*Van Fleet, Collins & Miller,* for Plaintiff in Error;
*Bussey, Mann & Barton,* for Defendants in Error.

DAVIS, J.—It seems to me that the declaration in this case was sufficient to withstand a general demurrer such as was sustained by the trial judge.

The declaration sets out the terms of a building contract between plaintiff and McIntosh, the contractor. The contractor was to construct a building for plaintiff under the contract, plans and specifications, and the United States Fidelity and Guaranty Company became surety on a bond which was given by the contractor to save harmless the plaintiff in the event McIntosh failed to construct the dwelling in accordance with the plans and specifications attached to and made a part of the contract sued on.

A copy of the contract and specifications is made a part of the declaration. The declaration itself contains the following allegations:

"That said specifications further provide, among other things, that it was the intent of plaintiff and said McIntosh to obtain a sound, permanent and waterproof stucco covering of the outside of said buildings; that said buildings were completed by said McIntosh; that plaintiff, believing that said work had been done, and material furnished according to the true intent and purpose of said contract and specifications, paid said McIntosh in full for said material and labor; that the dwelling constructed under said contract and specifications was not constructed as

specified, in that within sixty days after completion thereof, and after payment thereof in full, the stucco on the outside of said dwelling cracked in many places; said stucco was not sound nor permanent, nor whas it waterproof; on the contrary, said stucco was unsound, weak, flimsy, and porous; that during a rain that occurred within sixty days after completion of said dwelling and after payment in full thereof, the rain in large quantities beat through said stucco and penetrated the walls of said dwelling to the inside plastering thereof, and then and there badly damaged the interior of the walls and other portions of said dwelling; that due to the poor workmanship and poor quality of said stucco, it became necessary for plaintiff to, and he did, have large quantities of said stucco removed from outside of said dwelling and other, proper stucco put on said dwelling in place of said defective material, that as a result of said defective stucco and poor workmanship, and to repair other damages caused thereby, plaintiff incurred heavy expenses necessary to remedy said damage; that the total expense for labor and material incurred by plaintiff to repair said damage caused by said defective stucco and workmanship is $1,873.55 as shown by bill of particulars filed herewith, and made a part hereof.

That said specifications provide, among other things, that all work would be done in a workmanlike manner, and that all material would be the best of their respective kinds; that in violation of said agreement, the roofing of said dwelling was improperly constructed in that the roofing material consisting of tiles was improperly set in such a manner that the roof leaked and was open to the weather; that to repair said roof to stop said leaks plaintiff necessarily expended the sum of $14.00. That in further violation of said specifications, and in breach thereof, the fireplace was improperly constructed in that the flue thereof would not draw smoke or gases from the fireplace, but on the contrary the smoke and gases from the fireplace in said dwelling passed into the inside rooms thereof;

that to remedy said defect plaintiff necessarily expended $85.00. The said specifications provided that all windows would be fitted with copper screen; that in violation thereof all windows were provided by said McIntosh with galvanized screen instead of copper screen; that due to said substitution, plaintiff has been damaged in the sum of $79.00."

In Mayes v. Lane, 25 Ky. L. 824, 76 S. W. 399, it was held that where sureties of a bonding contractor bind themselves that the contractor would furnish the material and erect the building "in strict accordance with the terms and conditions of the contract" and the contractor failed to comply with the contract, the building was not completed so as to release the sureties from liability. And in Hormel & Co. v. American Bonding Co., 112 Minn. 288, 128 N. W. 12, 33 L. R. A. (N. S.) 513, it was held that while a bond of the kind sued on in this case resembles a contract of suretyship, it is in effect a contract of insurance, to which the rules of construction peculiar to contracts of suretyship proper do not apply, but to which the rules governing ordinary contracts of insurance are applicable.

The rule stated in Hormel & Co. v. American Building Co., *supra,* is the same rule which has been recognized in Florida. See National Surety Co. v. Williams, Receiver, 74 Fla. 446, 77 Sou. Rep. 212, where it was held that an indemnity bond for a bank cashier to save harmless the bank from misprisions of that officer, executed by a surety company in the course of its business of suretyship for hire, was in effect a contract to which the rules governing ordinary contracts of insurance should be applied. It appeared in that case that the "bond" in question had been given to indemnify the bank against losses by its cashier through breach of duty. Many authorities were cited in the opinion of Mr. Justice West to support that view, and the bond in that case was construed in like

manner as an insurance contract is construed, although it appeared that the particular instrument sued on in that case was denominated a *bond* by all the parties to it, was executed in the form of a *bond,* but was regarded by all the parties to it as a contract of suretyship and was sued on in the declaration as such. This court, however, dealt with the controversy as one in effect controlled by the law governing contracts of insurance. The oft 'stated maxim that ''sureties are favored in the law'' has no application to contracts of suretyship made by licensed surety companies in the business of suretyship for hire. See People ex rel. Kasson v. Rose, 174 Ill. 310, 51 N. E. 246.

I think the demurrer should have been overruled on the authority of Perry Hotel Co. v. Courtney, 102 Fla. 1041, 136 Sou. Rep. 691; Hazen v. Cobb, 96 Fla. 151, 117 Sou. Rep. 853, and other cases which hold that sustaining a demurrer to a declaration not wholly failing to state a cause of action constitutes error.

Judgment reversed.

BUFORD, C.J., AND WHITFIELD, ELLIS AND BROWN, J.J., concur.

TERRELL, J., dissents.

TERRELL, J., dissenting.—Plaintiff in error who was plaintiff below, sued defendants in error who were defendants below, in a common law action, for breach of contract to construct a dwelling. A demurrer to the declaration was sustained and plaintiff, declining to plead further, the cause was dismissed as to defendant, United States Fidelity and Guaranty Company. This writ of error was taken to that judgment.

The contract sued on, was one of suretyship to save harmless the plaintiff in the event the defendant, McIntosh, failed to construct the dwelling in accordance with plans and specifications attached to and made part of the contract sued on. The dwelling was completed,

accepted and paid for by the plaintiff. Alleged defects in construction later developed on which the instant action is predicated.

Even if plaintiff is entitled to recover, the declaration does not sufficiently negative the fact that the dwelling was not constructed in accordance with the plans and specifications. The demurrer was therefore properly sustained.