291 So.2d 650 (1974)
Lee RUWITCH and James W. Seiler, Appellants,
v.
FIRST NATIONAL BANK OF MIAMI, Etc., et al., Appellees.
No. 73-742.
District Court of Appeal of Florida, Third District.
March 19, 1974.
Rehearing Denied April 9, 1974.
*651 Horton & Perse, Miami, for appellants.
McCarthy, Steel, Hector & Davis and Barry R. Davidson, Miami, Quarles & Mills, South Miami, for appellees.
Before PEARSON, CARROLL and HENDRY, JJ.
PER CURIAM.
Appellants, defendants in the trial court, appeal a final judgment in favor of the plaintiffs, cross-appellants herein, for $120,000, plus attorneys' fees and costs on a contract of guaranty.
The facts in this cause are as follows:
Appellants, Mr. Ruwitch and Mr. Seiler, together with Mr. Frederick Baker were officers of Harmony of Fort Lauderdale, Inc. (hereinafter Harmony), a company engaged in the business of providing background music to other businesses. Ruwitch, the company president, and Seiler, the vice-president, were characterized as "silent partners." Baker, the secretary-treasurer, actively managed the business. A final judgment has been entered previously against Baker, and he is not a party to the instant appeal.
In early 1963, the First National Bank of Miami commenced an arrangement with Harmony establishing a $25,000 line of credit to the company secured both by personal guarantees of Baker, Seiler and Ruwitch and by certain collateral of Harmony consisting of the equipment it installed. In 1965, this line of credit increased to $100,000; and in 1966 and October, 1967 to $120,000 and $140,000 respectively. Each increase was accompanied by written guarantees purportedly signed by the appellants and Baker. However, these instruments contained in the bank's files were admitted forgeries, and until early January, 1968, Ruwitch and Seiler apparently had no knowledge of any extensions of credit to Harmony exceeding the original $25,000.
By January 4, 1968, the bank had made loans to Harmony totaling almost $124,000. On this date, Ruwitch and Seiler went to the bank and conferred with Mr. David Demarest, an assistant cashier handling the Harmony account at the time. Appellants *652 then executed a $120,000 guaranty, and they signed blank guaranty forms, which the trial court found were filled in with the amount of $140,000; and therefore, the court relieved appellants of any liability claimed as recovery under these latter forms.
Ruwitch testified concerning the reasons for executing the new guaranty for $120,000. He stated that perhaps a day or two before January 4, he and Seiler met with Demarest at which time the appellants learned of a $90,000 guaranty which contained forgeries of Ruwitch's and Seiler's signatures. Appellants also were informed at this meeting that Harmony owed the Bank $97,000 in loans. Ruwitch testified that he had no knowledge that the loan figure actually was approximately $124,000. He also stated that other forged guarantees in the bank's file were not disclosed at the meeting.
Asked why he executed a $120,000 guaranty after learning of this forgery, Ruwitch responded that Demarest urged him to because Harmony was a viable and a growing company requiring money for further growth; and the risk was minimal because collateral in excess of $300,000 was pledged and because appellants' liability was remote.
Testimony by deposition from Demarest and a vice-president of the Bank's installment loan department, Peter Bellows, indicated that the bank's primary reliance for repayment of the loans to Harmony was clearly placed upon the personal guarantees. In addition, Demarest testified that Harmony was not a substantial business and that its net worth was small.
Despite these facts, the evidence demonstrated that the Bank continued to loan Harmony money on the line of credit until approximately September, 1969, when the amount exceeded $163,000. In February 1969, Demarest again apprised Ruwitch of increased loans and sought a new guaranty which this time the latter refused to execute.
Based upon these facts, which the trial judge considered nonjury, the court entered a final judgment of $120,000 in favor of both plaintiffs, the bank and its insurer the Insurance Company of North America (INA).
Appellants urge reversal on the ground that the final judgment which was based upon the written guaranty of January 4, 1968 was procured by misrepresentation and concealment of material facts and lacked consideration. We disagree.
The fraud involved in this case which resulted in extensions of Harmony's line of credit was attributable to the actions of Baker, who managed Harmony. As a general rule, when knowledge of alleged misrepresentation or concealment of material facts is equally available to both parties and the subject matter is open equally to their inspection, one not availing himself of the opportunity to ascertain the truth, will not be heard to raise the misrepresentation of the other party. Scocozzo v. General Development Corporation, Fla. App. 1966, 191 So.2d 572; Potakar v. Hurtak, Fla. 1955, 82 So.2d 502.
Appellants were officers and guarantors of the principal, Harmony. As between two innocent parties suffering from the fraud of a third, the party whose own negligence or misplaced confidence enabled the third party to consummate the fraud must bear the loss. National Union F. Ins. Co. of Pittsburgh, Pa. v. Robuck, Fla.App. 1967, 203 So.2d 204. We hold that the trial court was correct in finding the appellants liable upon their written guaranty of $120,000.
However, we find greater difficulty in this case regarding the form of the judgment and the award of $17,500 in attorney's fees to counsel for the Bank. As previously indicated, judgment of $120,000 was entered in favor of both the Bank and INA. In the complaint, plaintiff INA was suing only for $97,647.54 based upon its subrogation rights because of a previous *653 payment to the bank. INA made the payment to the Bank under a bankers' blanket bond insuring the Bank's loss due to forgery. Therefore, of the total judgment the Bank was entitled to only $22,352.46, or that portion of the sum guaranteed by the appellants which the Bank had not been paid.
The question presented is whether or not INA by virtue of its right to subrogation is entitled to judgment against appellants as guarantor? We think this should be answered in the negative.
INA was a surety for hire by the Bank and the equitable maxim "sureties are favored in the law" has no application to a company in the business of suretyship for hire. Tapping v. McIntosh, Fla. 1932, 104 Fla. 715, 140 So. 773; Phoenix Indemnity Co. v. Board of Public Instruction, Fla. App. 1959, 114 So.2d 478. As such a surety, INA received premium payments from the Bank, and in turn agreed to insure the Bank upon the occurrence of certain specific risks, such as forgery.
In 83 C.J.S. Subrogation § 54, it is stated:
"The right to recover from a third person is conditional on whether or not the right of the one seeking subrogation is superior to the equities of those against whom the right is sought to be enforced, in contrast to the right to recover from the principal, which is absolute." See also 50 Am.Jur. Subrogation § 111.
In our view, the equities of INA are not superior to the appellants who were acting as guarantors to Harmony. The liability of the appellants is predicated on their contract of guaranty; INA's liability to the Bank arose out of the specific provision of the policy covering forgery. Both parties were secondarily liable for the actions of Harmony, and Baker, as they affected the Bank. Therefore, the judgment in favor of INA must be reversed.
This leaves a remaining question regarding attorneys' fees. Prior to the trial court's entry of an order, the parties stipulated at a post-trial conference that $17,500 constituted the reasonable value of attorneys' fees, based upon a $120,000 judgment. In light of our holding that the Bank is entitled only to a judgment of $22,352.46, this cause will be remanded to the trial court for additional proceedings to set a reasonable fee based on this latter sum.
By cross-appeal, the Bank asserts that the trial court erred by failing to provide interest on the principal sum awarded in the final judgment from the date of demand on the appellants or alternatively from the date of commencement of this action.
As a general rule, interest is recoverable in actions ex contractu at the legal rate from the date in which the debt was due. Huntley v. Baya, Fla.App. 1962, 136 So.2d 248. However, in this cause the contract did not provide for interest payments nor was a specific due date for repayment of the loans provided for nor was the amount owed the bank certain until entry of the final judgment. In the absence of a due date for repayment in the contract of guaranty, we think the trial court's denial of interest was proper.
Therefore, for the reasons stated and upon the authorities cited, the judgment in favor of the Bank is affirmed and modified to provide a sum of $22,352.46, plus attorneys' fees and cost. The cause is remanded to re-determine reasonable attorneys' fees. The judgment in favor of INA is hereby reversed.
Affirmed in part; reversed in part.