### In re BRYANT TOOL & MANUFACTURING INC., Debtor.

#### Bankruptcy No. 81–00187–BKC–TCB.

United States Bankruptcy Court, S. D. Florida.

Jan. 18, 1982.

Angus Campbell, West Palm Beach, Fla., for debtor.

Stephen J. McDonald, Hollywood, Fla., for Sheridan, Inc.

### ORDER ON CLAIMS 13 AND 23
### (Sheridan, Inc.)

THOMAS C. BRITTON, Bankruptcy Judge.

The debtor-in-possession in this chapter 11 case has objected to Claim Nos. 13 and 23, filed by Sheridan, Inc. (C.P.No. 63, 65). The objections were heard on January 5, 1982. At the hearing, the creditor abandoned Claim No. 13, which was superseded by Claim No. 23 ($86,231.50).

The claim is based on an equipment lease of a 55 ton press brake leased by Sheridan on December 5, 1980 to the debtor and a third party, Mercury Machine Tool & Supply Corporation, for five years at $1,487 a month, including tax. The objection is that the "claim is based on forged documents".

In this court, Claim No. 23 constitutes prima facie evidence of the validity and amount of Sheridan's claim. B.R. 301(b). The evidence offered by the debtor fails to overcome that prima facie evidence; therefore, the objection is overruled and the claim is allowed in full as a general unsecured claim.

The equipment lease was executed in Florida by the debtor, purportedly by its president, Larry Bryant, and is personally guaranteed, purportedly by Bryant and his wife. The lease bears a delivery certificate and acceptance receipt, acknowledging delivery and installation of and acceptance of the equipment, signed by the debtor, again purportedly by Bryant. These individuals have testified that neither signed the lease nor the acceptance and neither authorized any other person to sign their names. The execution by the other parties is admittedly genuine. The co-lessee/supplier, Mercury Machine, executed the document through its president, John W. Williamson. Each of the signatures was acknowledged before a Florida notary who has certified the debtor's execution of the document.

The debtor was not in financial distress at the time this lease was executed. Williamson was a director and vice-president of the debtor. This specific equipment was needed by and desired by the debtor which also required the financing provided by Sheridan. Bryant had numerous similar transactions involving other equipment and Mercury and Williamson at or about the same time. The equipment was never delivered to Bryant and the parties agree that if the corporate execution was unauthorized, it was done by Williamson as part of a device to defraud both Bryant and Sheridan. There is no evidence that his fraudulent intentions were known to the other officers at that time.

The debtor executed and delivered its check for $3,184 on November 26, 1980 to Sheridan as the initial deposit and advance rental for this equipment. That check was signed by another officer, the Secretary, and was admittedly authorized. It was executed in blank and given to Williamson with authority to insert the payee's name when he had completed financing arrangements. As Bryant has testified, Williamson was "actively involved, very much so" in obtaining equipment for the company.

On December 8, 12 days after the notary's certificate, Sheridan sent the debtor a copy of the lease by certified mail and it was received by the Secretary. Forty-six days later Bryant disavowed the lease and his signature. Bryant was then in financial difficulty. It has never requested return of the $3,184 payment.

■ Although U.C.C. §§ 3–403 and 3–404 (adopted by Florida in Chapter 673, Florida Statutes) would appear to be controlling, it is clear that they are not applicable in this instance, because the U.C.C. provisions relating to unauthorized signatures apply only to negotiable instruments, and an equipment lease is not such an instrument. This leaves us to be governed by Florida common law. *European American Bank and Trust Co. v. Starcrete International Ind., Inc.*, 5 Cir. 1980, 613 F.2d 564.

It is settled in Florida that:

"When an acknowledgment appears to be regular on its face, and there is nothing in the instrument or the record thereof to indicate a failure to comply with any of the formal requirements as to the execution, acknowledgment, or record, the legality of such execution and acknowledgment may be assumed in the absence of notice or knowledge of any irregularity." 1 *Fla.Jur.2d* Acknowledgments, § 24.

■ The burden is on the party asserting invalidity to do so by clear, satisfactory, and convincing evidence. The testimony of the parties alone is not legally sufficient to overthrow a prima facie valid certificate of acknowledgment except where there is an issue raised as to the officer's jurisdiction to take the acknowledgment. Ibid. §§ 26, 27. No such issue is suggested here.

I find that the debtor has not carried its burden of overcoming the evidentiary effect of the acknowledgment here.

■ Secondly, the debtor by its conduct has estopped itself from denying Williamson's authority to represent and bind the corporation in this transaction. *Ruwitch v. First National Bank of Miami*, Fla.App. 1974, 291 So.2d 650, 652, where the court held the corporation estopped and said:

"Appellants were officers and guarantors of the principal, Harmony. As between two innocent parties suffering from the fraud of a third, the party whose own negligence or misplaced confidence enabled the third party to consummate the fraud must bear the loss."

Finally, I also find that Williamson had apparent authority to act in this instance for the debtor and that the debtor, through other officers, negligently reinforced that apparent authority to the point that Bryant became estopped to deny the corporation's execution of the lease. *American Lease Plans, Inc. v. Silver Sand Co.*, 5 Cir. 1981, 637 F.2d 311, 315. As the court there stated, dealing under Florida law with a fraudulently executed corporate truck lease:

"It is of no avail to argue that Surbaugh did not have the authority to certify falsely, or to guarantee fraudulently; most assuredly he did not. But, given the position Silver Sand placed him in, and the authority the company clothed

him with, it is equally of no avail to argue under the law of Florida for an absence of agency-based liability on the part of Silver Sand. The issue, rather, is whether any circumstances were present which should have undermined American Lease Plan's otherwise reasonable reliance on the appearance of Surbaugh's authority."

In our case, as in the case of Silver Sand, there was no clue that the corporate agent's acts were unauthorized. I find, therefore, that the debtor would be liable to Sheridan, in any event, for the fraud practiced on it by Williamson in this instance if, as the debtor contends, the corporate signature was not authorized.

This claim was filed as a secured claim. It is at least tacitly acknowledged that the equipment, if it ever existed, cannot be found. Therefore, the claim has been allowed as a general unsecured claim.

It should also be noted that the issue of the Bryants' liability on their purported guarantees is not before this court and, therefore, nothing said in this order is dispositive of that issue.