449 So.2d 872 (1984)
The SCHOOL BOARD OF PINELLAS COUNTY, Florida, Appellant,
v.
ST. PAUL FIRE & MARINE INSURANCE COMPANY; Biltmore Construction Company, Inc., Appellees.
No. 83-573.
District Court of Appeal of Florida, Second District.
March 30, 1984.
Rehearing and Clarification Denied May 16, 1984.
B. Edwin Johnson, Clearwater, for appellant.
Charles W. Pittman of Macfarlane, Ferguson, Allison & Kelly, Tampa, for appellees.
SCHEB, Judge.
The School Board of Pinellas County contends that the trial court erred in entering summary final judgment in favor of St. Paul Fire & Marine Insurance Company, as surety on a contractor's performance bond. We agree and reverse.
*873 On May 14, 1975, the School Board entered into a contract with Biltmore Construction Company, Inc., for construction of Pinellas Park Senior High School. On that same date Biltmore, as required by the contract as well as by section 235.32, Florida Statutes (1975), furnished the School Board a performance bond with St. Paul, as surety. The bond, issued on a standard printed form furnished by St. Paul, incorporated by reference the provisions of the construction contract which included the plans and specifications for the high school project. The bond was conditioned on Biltmore's faithful performance of the construction contract. Construction proceeded and in December 1977 the School Board accepted the building as completed and, upon certification by its architect, made final payment to the contractor.
In December 1979 the School Board brought action against Biltmore, St. Paul, and others seeking recovery for damages it sustained from alleged latent defects, which it claimed to have discovered after its acceptance of the building. The School Board alleged that Biltmore had breached its contract by using improper materials in construction of the roof and installing defective glass panels. Biltmore answered the complaint; however, St. Paul filed a motion for summary judgment contending that its performance bond did not provide coverage for the Board's claim, and further, that the statute of limitations for asserting a claim against it had expired. At the hearing St. Paul elected not to rely upon the statute of limitations, but reserved its right to do so at a future date. The trial court, relying on Florida Board of Regents v. Fidelity & Deposit Co., 416 So.2d 30 (Fla. 5th DCA 1982), concluded that the performance bond did not cover the type of claims made by the School Board once the Board had accepted the completed building and entered summary final judgment in favor of St. Paul. This appeal by the School Board ensued.
Since the trial court's summary final judgment held St. Paul was not liable to the School Board as a matter of law, we address only one narrow issue. May a surety under a performance bond guaranteeing faithful performance of a construction contract be held liable for latent defects discovered in the project after the completion of the building and acceptance thereof by the owner?
At the outset, we point out that St. Paul's performance bond must be interpreted in conjunction with the contract between Biltmore and the School Board. This is so because the contract between the parties is, by reference, made a part of the bond. Thus, since the bond requires the contractor to "promptly and faithfully perform said contract," St. Paul, as surety, may be liable for the contractor's breach of a contractual provision. City of Orlando v. H.L. Coble Co., 282 So.2d 25, 27 (Fla. 4th DCA 1973).
The principle was also illustrated by the supreme court's decision in Tapping v. McIntosh, 104 Fla. 715, 718, 140 So. 773 (1932), where an owner sued a contractor and his surety. As here, the surety in Tapping issued a bond to protect the owner if the contractor failed to construct the building under the plans and specifications incorporated into the construction contract. Upon completion of the dwelling, the owner made final payment to the contractor. The owner alleged that he did so believing the work was performed according to the contract. Afterwards, the owner allegedly discovered several defects in the structure including cracked stucco which resulted in a leaky roof. The supreme court held that the owner's declaration was sufficient to withstand a demurrer by the surety. Id. at 716, 719, 140 So. 773. Here, likewise, we think the School Board stated a cause of action against the surety as well as the contractor, and it was error for the trial court to determine as a matter of law that the surety could not be held liable under its performance bond.
Our research has not disclosed any other Florida cases on performance bond coverage of latent defects. Other state courts, however, have held that where an owner accepted work with knowledge that it had *874 not been done according to the contract or where the defects were discoverable by reasonable inspection, the owner's acceptance was a waiver of defective performance. See Salem Realty Co. v. Batson, 256 N.C. 298, 123 S.E.3d 744 (1962); City of Osceola v. Gjellefald Construction Co., 225 Iowa 215, 279 N.W. 590 (1938); Town of Tonawanda v. Stappell, Mumm & Beals Corp., 240 A.D. 472, 270 N.Y.S. 377 (1934); City of Seaside v. Randles, 92 Or. 650, 180 P. 319 (1919); and Mayor of Newark v. New Jersey Asphalt Co., 68 N.J.L. 458, 53 A. 294 (1902). On the other hand, if the work was not performed according to the contract and acceptance of the work and payment of the contract price by the Board was without knowledge of latent defects, the acceptance and payment would not necessarily constitute a waiver or an estoppel to claim damages for such latent defects. Salem Realty Co., 123 S.E.2d at 751; City of Osceola, 279 N.W. at 594; Town of Tonawanda, 270 N.Y.S. at 379; American Employers' Insurance Co. v. Huddleston, 123 Tex. 285, 70 S.W.2d 696 (1934); City of Seaside, 180 P. at 325-326; and Mayor of Newark, 53 A. at 296. See also Milana, The Performance Bond and the Underlying Contract, 12 Forum 187, 190 (1976).
We feel the trial court's reliance on Florida Board of Regents v. Fidelity & Deposit Co. as the sole basis for its decision is misplaced. In that case, the fifth district, in an alternate ground for its decision, said: "Once the building is completed, or as we have said using the words of art in the construction industry `substantially completed,' then the surety under the performance bond is relieved of any further responsibility." Id. 416 So.2d at 32. We disagree with this statement as it relates to this case.
St. Paul's performance bond incorporated by reference the contract between the School Board and Biltmore and its bond was given to ensure the School Board that Biltmore's contract would be completed in accordance with the plans and specifications. If the School Board can establish that Biltmore breached its contract by failing to construct the building in accordance with the plans and specifications, that it was unaware of those defects at the time of its acceptance, and, that such defects were not apparent under reasonable inspection, then St. Paul may be held liable for such latent defects to the same extent that Biltmore is liable therefor. Of course, St. Paul's liability, if any, would be no greater than Biltmore's.
As noted, St. Paul also contended in its motion for summary judgment that the School Board's action was barred by lapse of time. That question was not determined by the trial court; therefore, we do not decide that issue. Of course, the issue of the applicability of the statute of limitations remains viable.
Accordingly, we vacate the summary final judgment and remand for further proceedings consistent with this opinion.
OTT, C.J., and SCHOONOVER, J., concur.