PER CURIAM.
Appellants are various mortgagees, who purchased certain notes and mortgages, and Sun Mortgage Co. (Sun), the mortgage company which originated and brokered these instruments to them. The mortgagees sought to foreclose their mortgages against appellee G.P.F., S.A., a foreign corporation which ultimately held title to certain properties encumbered by the mortgages at issue. G.P.F., in turn, filed a third-party action against Sun seeking indemnity, and alleging negligence on the part of Sun’s attorney and slander of title. In this appeal, the mortgagees and the mortgage company challenge the trial court’s final judgment after nonjury trial denying foreclosure of the mortgages, declaring the mortgages null and void, and finding that the mortgage company slandered G.P.F.’s title and was negligent. We affirm in part and reverse in part.
Foreign investors, acting through G.P.F. and a local real estate broker unconnected with Sun, purchased various residential real properties using attorney Nelson Res-nick, referred by the real estate broker, to handle the various closings. The investors “checked out” Resnick’s firm, and satisfied themselves that the firm was a reputable one, in good standing with the Florida Bar. Upon finding that they could not immediately sell the properties at a profit as they had intended, the investors and G.P.F. entered into a management agreement with Resnick, and signed broad powers of attorney in his favor, so as to enable him to sell, lease or otherwise manage the properties. These powers did not originally include the power to mortgage the property, but, at some point after they were signed, Resnick surreptitiously modified them so that they did contain such a provision. Resnick recorded these powers and thereafter mortgaged the properties through Sun. Certain of the property owners, thereafter, transferred their titles to G.P.F., with Resnick handling the transfers as attorney-in-fact. With each transfer of title to G.P.F., Res-nick sent to G.P.F. powers of attorney which, as the original ones, did not contain the provision allowing him to mortgage the properties. G.P.F. signed. Thereafter, Resnick modified these powers, as he had the earlier ones, to include granting him the power to mortgage these properties, and again mortgaged these properties, again through Sun, which ultimately sold the mortgages to the mortgagees herein. Resnick retained the proceeds of the mortgages, for which he was ultimately convicted and incarcerated.
When the mortgages went into default, the mortgagees sued G.P.F. seeking to foreclose their mortgages. G.P.F. defended by claiming that the signatures on the mortgages were unauthorized, and filed a third-party action against Sun seeking indemnity and alleging both negligence on the part of Sun’s attorney in not verifying Resnick’s authority, and slander of title. At trial, the mortgagees’ own expert testified to the effect that Sun’s counsel was negligent in not verifying the powers of attorney which Resnick presented to Sun for Sun’s use in closing the transactions. After nonjury trial, the court entered final judgment in favor of G.P.F., finding that its actions did not substantially contribute *609 to the making of the unauthorized signatures on the notes and mortgages, but that the negligence of Sun and its agent was the sole factor which did. The court concluded that Sun and its counsel owed the ultimate mortgagees a duty to verify with G.P.F. the validity of Resnick’s powers of attorney and of the authority which he claimed thereunder, particularly in light of the fact that there were “red flags” raising questions about the powers of attorney. Among other things, all of the powers contained a general power to borrow without referencing the specific mortgage loan to be made by Sun; many of the powers were stale, being three or four years old; in some cases there were changes in typeface within the same power of attorney (where Resnick had substituted a page); and in one case a loan was closed with no power of attorney at all. The court concluded that Sun and its counsel fell well below the ordinary standard of care. As a result, although Sun, its counsel, and (through them) the mortgagees had the opportunity to discover the fraud, they through their own carelessness failed to do so. The final judgment denied foreclosure of the mortgages, held them to be null and void, and found that Sun had slandered G.P.F.’s title and that Sun’s counsel was negligent.
Under Section 673.404, Florida Statutes (1987), “[a]ny unauthorized signature is wholly inoperative as that of the person whose name is signed unless he ratifies it or is precluded from denying it.” Upon a careful review of the record and of the arguments presented, we find that the trial court properly determined that “G.P.F. did not ratify any of the unauthorized signatures.” Further, we find substantial competent evidence in the record to support the trial court’s findings that G.P.F. was not negligent, that, under Section 673.406, Florida Statutes (1987), its actions did not “substantially contribute” to the making of the unauthorized signatures on the notes and mortgages at issue, and, accordingly, that G.P.F. is not thereby precluded from denying the unauthorized signatures. We likewise affirm the trial courts finding that both “Sun and its counsel ... were negligent in the handling of these mortgage transactions, noting, m particular, the mortgagees’ own expert testimony to the effect that Sun’s counsel was negligent in taking no steps to verify the powers of attorney which Resnick presented to Sun. We reject the mortgagees’ interpretation of our decision in Ruwitch v. First Nat’l Bank of Miami, 291 So.2d 650 (Fla. 3d DCA), cert. denied, 305 So.2d 196 (Fla.1974), inasmuch as that case involved alleged misrepresentation or concealment of material facts equally available to two innocent parties. As the trial court found, and as we have affirmed, neither Sun nor its counsel was “innocent” in the matter under review. The mortgagees are in the same boat, for in this case they were in reality co-venturers with Sun. In each instance they agreed to participate in the lending transaction and advanced the funds to Sun, which Sun used to close each loan. As the trial court found, the mortgagees relied on their co-venturer, Sun, as well as Sun’s counsel for the proper closing of the loans. G.P.F. is, therefore, properly entitled to the protection of Section 673.404. For these purposes we have assumed the correctness of appellant’s assertion that Sun and its counsel had no actual knowledge of Resnick’s fraud.
Having considered appellants’ other arguments, including the mortgagees’ es-toppel argument which we reject upon the authority of Rinker Materials v. Palmer First Nat’l Bank and Trust Co. of Sarasota, 361 So.2d 156 (Fla.1978), we nonetheless remain unpersuaded. Appellants’ alternative point on appeal has merit. G.P.F. took the position below, and here, that it was entitled to keep some $300,000 in financial benefits derived from the appellants’ mortgages, while simultaneously having those same mortgages declared null and void. G.P.F. cannot have it both ways. It is undisputed that proceeds of the mortgages were used to pay $33,000 of G.P.F.’s real estate taxes, and $267,000 of G.P.F.’s bona fide indebtedness. It is fundamental that in order to invoke the aid of equity — in this case, equitable relief from the twelve mortgages — a litigant must do equity — in this case, tender back the benefits G.P.F. re *610 ceived from the fraudulent mortgages. G.P.F.’s position — that the appellants were somehow volunteers who need not be repaid — is patently absurd.
The requirement that G.P.F. return the financial benefits flows not only from equitable principles, see § 673.103, Fla.Stat. (1989), but also from the express requirements of the Uniform Commercial Code. G.P.F. has relied heavily on Section 673.-404, in contending that it should be relieved of the effects of Resnick’s unauthorized signature. A party cannot rely on Section 673.404, however, where it has ratified the unauthorized signature. The Uniform Commercial Code comment makes clear that a party may ratify an unauthorized signature through conduct, and the specific example used by the commentators is the one involved here, where there has been “retention of benefits received in the transaction,” U.C.C. § 3-404, comment 3, after the party knows of the unauthorized signature. Id. The appellants are entirely correct in arguing that G.P.F. is required to repay the financial benefits it received, and that the repayment must be a precondition of having the notes and mortgages set aside. Failure to repay would constitute a ratification and would preclude the equitable relief sought by G.P.F. The same result is reached through principles of equitable subrogation. The judgments entered below must be amended to require G.P.F.’s repayment of financial benefits received, as a condition of the equitable and monetary relief sought by G.P.F.
The judgment of the trial court is, accordingly, affirmed in part, reversed in part, and remanded for further proceedings consistent herewith.