CAMPBELL, Judge.
This appeal arises from the trial court’s ruling that an owner’s claim against a surety on a payment and performance bond was barred by the five-year limitation period set forth in section 95.11(2)(b), Florida Statutes (1981). All parties agree that section 95.11(2)(b), pertaining to causes of action based on written contracts, is the applicable statute of limitations. The issue before this court is when the limitations period begins to run for a suit against a payment and performance bond surety when the owner alleges latent defects constituting a breach of warranty by the insured general contractor. The trial court held that because section 95.11(2)(b) does not contain a tolling provision for latent defects as does section 95.11(3)(c), all actions accruing under the terms of the surety bond must have been commenced no later than five years from the date of completion of construction. For the reasons hereinafter stated, we disagree and reverse.
Appellant, Southwest Florida Retirement Center, Inc., d/b/a The Village on the Isle (owner), contracted with cross-appellant McCarthy Construction Co., f/k/a McMerit Construction Co. (general contractor), for the construction of a retirement facility. The facility was built in two phases based on two contracts between the owner and the general contractor. The contracts were executed in 1981 and 1983. Appellee, Federal Insurance Co. (surety), and cross-appellees, Firemen’s Insurance Company of Newark, Great American Insurance Companies, and Cotton States Mutual Insurance Co., all issued payment and performance bonds for each phase of construction. All of the parties to these appeals agree that the two contracts between the owner and the general contractor were incorporated by reference and “made a part” of the performance bonds. The complaint *1132 alleges phase I construction was completed in 1982, and phase II was completed in 1984.
In 1994, the owner filed its complaint against the general contractor and the surety. The complaint alleged that in 1993, a severe storm caused water damage to the retirement center buildings. While investigating the extent of the water intrusion, the owner allegedly discovered latent defects which resulted from the general contractor’s breach of an express warranty. The owner, in its claim against the surety, alleged breach of the bond contracts by the surety’s failure to cure the general contractor’s warranty violations.
Based on these allegations, the surety moved for a judgment on the pleadings, asserting that the owner’s claim was time-barred because all construction was completed no later than 1984, and therefore any claim arising from the bonds was extinguished no later than five years thereafter, a date substantially prior to the filing of the owner’s action below. The trial court, agreeing with the surety, entered final judgment against the owner.
All parties to these appeals agree that the issue in the appeal and the cross-appeal is exactly the same, i.e.: Does section 95.11(2)(b), Florida Statutes (1981), the five-year statute of limitations for filing a cause of action based on written contract, bar the appellant owner’s action against the appellee (contractor’s surety) and the contractor’s (cross-appellant) action against its subcontractors’ sureties (cross-appellees) for latent defects?
We agree with the owner that by incorporating the construction contract into the bond, the surety’s liability becomes coextensive with that of the general contractor and that a timely contractual claim against the general contractor would result in a valid claim against the surety’s bond.[1] See American Home Assurance Co. v. Larkin Gen. Hosp., Ltd., 593 So.2d 195 (Fla.1992). We conclude that, the contracts being co-extensive, the limitations period for an action against the surety did not begin to run until discovery of the latent defects constituting the breach of warranty. The trial judge, relying on School Board of Volusia County v. Fidelity Co. of Maryland, 468 So.2d 431 (Fla. 5th DCA 1985), was persuaded that because section 95.11(2)(b) does not contain a tolling provision for latent defects as does section 95.11(3)(c), relating to actions founded on construction of improvements to real property, appellant’s cause of action is barred.
School Board of Volusia County apparently relied upon that lack of tolling language in section 95.11(2)(b) to hold that the five-year limitation specified therein is an absolute bar in an action against a surety on a payment bond for latent defects that are discovered beyond the five-year period beginning with the acceptance of the completion of construction by the owner. We interpret that to be the holding of School Board of Volusia County because that opinion concludes with the following statement: “Because we base our decision on application of the statute of limitations we do not reach the additional issue raised by the parties as to whether latent defects are covered under a performance bond after the building is substantially completed.” 468 So.2d at 433.
We conclude that School Board of Volusia County is in error if its holding is that the five-year statute of limitations acts as an absolute bar to actions brought against a contractor’s surety for post-completion latent defects that the contractor is hable for even if the surety contract makes provisions for such a liability of the surety. School Board of Volusia County cites to Florida Board of Regents v. Fidelity & Deposit Co. of Maryland, 416 So.2d 30 (Fla. 5th DCA 1982), as support for its position. Florida Board of Regents discusses the general rule that sureties on performance bonds are generally relieved of further responsibility under the bond once the construction insured is “substantially completed.” However, the Florida Board of Regents decision expressly holds: “We affirm the summary judgment not only because the lawsuit was not filed until after *1133 the statute of limitations had run but also because the payment and performance bond did not insure against the risks described in this suit.” 416 So.2d at 31 (emphasis supplied). Moreover, the statute of limitation applicable in Florida Board of Regents was section 255.05, Florida Statutes (1965), which contained the following explicit provision: “No action or suit shall be instituted or prosecuted against the contractor or against the surety on the bond required in this section after one year from the performance of the labor or completion of delivery of the materials and supplies.” We decline to subscribe to a position that would hold a surety not liable for latent defects even if the surety contract does, by its specific provisions, ensure against such latent defects for which the contractor is liable under the contractor’s contract with the owner, and the five-year statute of limitation has not run from the time of discovery of the defects.
This court has, in fact, so held in School Board of Pinellas County v. St. Paul Fire and Marine Insurance Co., 449 So.2d 872 (Fla. 2d DCA), rev. denied, 458 So.2d 274 (Fla.1984), where we concluded:
We feel the trial court’s reliance on Florida Board of Regents v. Fidelity & Deposit Co. as the sole basis for its decision is misplaced. In that ease, the fifth district, in an alternate ground for its decision, said: “Once the building is completed, or as we have said using the words of art in the construction industry ‘substantially completed,’ then the surety under the performance bond is relieved of any further responsibility.” Id. 416 So.2d at 32. We disagree with this statement as it relates to this ease.
St. Paul’s performance bond incorporated by reference the contract between the School Board and Biltmore and its bond was given to ensure the School Board that Biltmore’s contract would be completed in accordance with the plans and specifications. If the School Board can establish that Biltmore breached its contract by failing to construct the building in accordance with the plans and specifications, that it was unaware of those defects at the time of its acceptance, and, that such defects were not apparent under reasonable inspection, then St. Paul may be held liable for such latent defects to the same extent that Bilt-more is liable therefor. Of course, St. Paul’s liability, if any, would be no greater than Biltmore’s.
449 So.2d at 874.
We conclude that appellees and the trial judge have simply failed to apply the general law of contracts, relying instead on an absolute bar by the statute of limitations, regardless of the contract provisions. Appel-lees argue that this court in School Board of Pinellas County is in conflict with Florida Board of Regents. We disagree because we conclude that Florida Board of Regents was based upon the lack of a specific contract provision covering latent defects and a specific statute of limitation barring recovery after one year. Appellees argue that our supreme court’s cite to Florida Board of Regents in Larkin implicitly overruled School Board of Pinellas County. The issue, however, in Larkin was the question of delay damages. We do not believe that the supreme court, in citing Florida Board of Regents, intended to determine the coverage for latent defects. We continue to adhere to School Board of Pinellas County and further conclude that Larkin, in fact, supports our position because it holds as follows:
A bond is a contract, and, therefore, a bond is subject to the general law of contracts. Crabtree v. Aetna Cas. & Sur. Co., 438 So.2d 102 (Fla. 1st DCA 1983). The intent of the parties to the contract should govern the construction of a contract. Underwood v. Underwood, 64 So.2d 281 (Fla.1953). To determine the intent of the parties, a court should consider the language in the contract, the subject matter of the contract, and the object and purpose of the contract. Clark v. Clark, 79 So.2d 426 (Fla.1955).
[[Image here]]
The terms of the performance bond control the liability of American. The language in the performance bond, construed together with the purpose of the bond, clearly explains that the performance bond merely guaranteed the completion of the construction contract and nothing more. Upon *1134 default, the terms of the performance bond required American to step in and either complete construction or pay Larkin the reasonable costs of completion. Because the terms of the performance bond control the liability of the surety, American’s liability will not be extended beyond the terms of the performance bond. Therefore, American cannot be held liable for delay damages.
593 So.2d at 197-198. Clearly, however, under the holding of Larkin, if the terms of the performance bond do cover the damages sought, the liability of the surety should be enforced. See U.S. Fid. & Guar. Co. v. Gulf Florida Dev. Corp., 365 So.2d 748 (Fla. 1st DCA 1978). Parties to a surety contract or performance bond, unless prohibited by statute, are as free to contract for the coverage desired as are parties to any other type of contract, and when they do so, basic contract law applies. Statutes of limitations should then also be applied according to when, under the terms of the contract, a cause of action accrues.
In City of Orlando v. H.L. Coble Construction Co., 282 So.2d 25 (Fla. 4th DCA), cert. denied, 288 So.2d 505 (Fla.1973), the court held that a construction contract contained a post-construction “performance warranty,” and that, upon breach thereof, the contractor and its surety could be liable therefor. The court found that the surety was liable for the contractor’s post-construction breach because “[t]he condition of the bond is that the contractor shall fully, promptly and faithfully ‘perform the contract and all obligations thereunder’. The performance warranty being an obligation under the contract, the bond remains applicable to the claim alleged by the City and we find no error in this respect.” 282 So.2d at 27.
In regard to the commencement of the running of the five-year statute of limitation applicable to a contract, it begins to run upon a breach of the provision of the contract sought to be enforced. In Briggs v. Fitzpatrick, 79 So.2d 848 (Fla.1955), the court considered an action to recover compensation for services rendered pursuant to a contract. In that case, Helen Briggs sought compensation for services rendered over a period of years to a Laura Siler. Siler had promised Briggs that if Briggs rendered personal services to Siler during Siler’s lifetime, Briggs would be compensated for those services at Siler’s death. Briggs rendered such services from 1938 until Siler’s death in 1952. The court held: “In such a situation the law is that the period of limitations does not begin to run, in the absence of a repudiation of the contract by one of the parties, until the death of the promisor, for the reason that the debt is not due until that time.” 79 So.2d at 851.
In Donovan v. State Farm Fire & Casualty Co., 574 So.2d 285 (Fla. 2d DCA 1991), this court held in a case turning on when a statute of limitation began to run on a claim under a contract of insurance:
Such situations are to be governed by the general principles of contract law. When parties are voluntarily acting pursuant to a contract, there is no cause of action upon that contract until a breach occurs. Special Tax School Dist. No. 1 of Orange County v. Hillman, 131 Fla. 725, 179 So. 805 (Fla.1938). In regard to insurance contracts, a specific refusal to pay a claim is the breach which triggers the cause of action and begins the statute of limitations running. See Klein v. John Hancock Mut. Life Ins. Co., 683 F.2d 358 (11th Cir.1982); Firemen’s Ins. Co. of Newark, N.J. v. Olson, 176 So.2d 594 (Fla. 3d DCA 1965). Here, Donovan submitted medical bills and State Farm paid them over a period of three years until State Farm notified Donovan in writing, on November 17, 1986, that it would make no further payments. Only at that point did Donovan acquire a right to sue which began the statute running. His complaint was therefore timely filed within the five-year limitation period.
574 So.2d at 286. See also State Farm Mut. Auto. Ins. Co. v. Lee, 678 So.2d 818 (Fla.1996); Roth v. State Farm Mut. Auto. Ins. Co., 581 So.2d 981 (Fla. 2d DCA 1991); Mason v. Yarmus, 483 So.2d 832 (Fla. 2d DCA 1986); Aetna Casualty & Sur. Co. v. Bd. of Pub. Instruction of Pinellas County, 195 So.2d 41 (Fla. 2d DCA 1967); Fradley v. County of Dade, 187 So.2d 48 (Fla. 3d DCA 1966).
*1135 We reverse the judgment on the pleadings and remand to the trial court with directions that appellant’s and cross-appellant’s causes of action be reinstated.
THREADGILL, C.J., concurs.
BLUE, J., dissents with opinion.

. The viability of the owner’s warranty claim against the general contractor is not an issue in this appeal.