365 So.2d 748 (1978)
UNITED STATES FIDELITY AND GUARANTY COMPANY and Chapman & Sons, Inc., Appellants,
v.
GULF FLORIDA DEVELOPMENT CORPORATION, Appellee.
No. DD-480.
District Court of Appeal of Florida, First District.
November 9, 1978.
Rehearing Denied January 18, 1979.
*749 Paul P. Sanford of Rogers, Towers, Bailey, Jones & Gay, Jacksonville, Thomas T. Remington and Walter J. Smith of Smith, Grimsley, Barron & Remington, Fort Walton Beach, for appellants.
Lawrence W. Oberhausen and Wilmer H. Mitchell of Mitchell & Oberhausen, Pensacola, for appellee.
BOYER, Acting Chief Judge.
Appellants, United States Fidelity and Guaranty Company (USF&G) and Chapman & Sons, Inc. (Chapman) appeal a final judgment rendered after the jury reassembled and returned a second verdict increasing the liability of both Chapman and USF&G.
In 1971, appellee, Gulf Florida Development Corporation (Gulf Florida), and Chapman entered into a contract for the construction of a condominium. USF&G issued a performance bond guaranteeing Chapman's performance under the contract. A second contract was executed between Chapman and Gulf Florida in 1972. Two years later, Chapman was terminated and Gulf Florida filed a complaint against Chapman for breach of the 1972 construction contract. An amended complaint was filed naming USF&G as a defendant. After a lengthy trial, the jury was instructed and retired. At approximately 11:00 p.m. the jury returned a verdict against Chapman in the amount of $162,800.00 and against USF&G in the amount of $335,400.00. Since the verdict was inconsistent with the instructions (the verdict against the surety was higher than the verdict against the contractor although the jury had been instructed that the damages which could be assessed against the surety were damages proved against the contractor) counsel for Gulf Florida moved that the jury be reinstructed and sent back to correct the verdict or in the alternative that the case be adjourned until the following morning so that the parties might research the question and determine the proper procedure to be followed. The court and counsel for both USF&G and Chapman were of the view that the verdict could not be sent back to the jury for clarification. The jury was polled by the court and discharged. In the early hours of the next morning, Gulf Florida filed a motion to reassemble the jury. A hearing was held, after which the court granted Gulf Florida's motion and ordered the clerk not to record the verdict. The court's order to reassemble instructed the jury that they remained under the same admonitions as the court had given them during the trial period. Five days later the jury was reassembled and the trial judge inquired of the jury members whether or not they had read the incorrect newspaper accounts of the trial and subsequent verdict. Five jurors said they had read the accounts but they responded negatively to the question by the court as to whether or not they had been swayed in any manner or prejudiced by virtue of having read the articles. The jury was reinstructed, the court giving both the original instructions and supplemental instructions. The jury retired and returned a second verdict finding against Chapman in the amount of $663,000.00 and against USF&G in the amount of $499,200.00. USF&G filed motions for remittitur and a new trial which were denied. This appeal followed.
The first point raised by USF&G and Chapman is whether or not the trial court erred in ordering the jury to reassemble and reconsider its verdict after the verdict had been rendered, received and published by the court and the jury had been discharged. We agree that the trial court erred and reverse.
After a jury has returned its verdict, has been discharged and separated, it cannot be recalled to alter or amend the verdict. *750 Miller v. Hoc, 1 Fla. 189 (Fla. 1847). The reason for this rule is that upon discharge, jury members lose their separate identity as a jury, and are subjected to extra-trial influences which may affect their verdict upon reassembly. Smith v. State, 330 So.2d 59 (Fla. 1st DCA 1976).
In Miller, upon which appellants rely, two cases were tried together and submitted to the jury. The jury returned only one verdict which found for the plaintiff and assessed damages of $1,500.00, without separating the damages in the two cases. The trial court discharged the jury. Four days later, the plaintiff moved to recall the jury to amend the verdict to apportion the damages between the two cases. The trial court granted the motion and the jury was recalled. The trial judge gave the jury additional instructions to cure the defect in the verdict after which the jury returned a verdict in proper form. On appeal, the Supreme Court ruled it was error to recall the jury after it had been discharged.
Gulf Florida relies on this court's decision in Masters v. State, 344 So.2d 616 (Fla. 1st DCA 1977). However, in Masters, the jury was recalled within minutes of the discharge. The jury in that case remained an undispersed unit within the control of the court which is clearly distinguishable from the case sub judice. Concerning the outside influences upon that jury, the Masters court stated:
"[T]here is nothing in the record to indicate that any outside influence had been brought to bear upon the jury, or any member of it during the interim before its recall, or that any opportunity existed for the jury, or any member of it, to be communicated with or tampered with by any person during the very few minutes that transpired between the time of discharge and recall." 344 So.2d at page 619.
The jury in this case was separated and out of the presence of the court for a period in excess of five days. During that period the opportunity existed for the jury to be communicated with or tampered with by any person. In fact, several jurors admitted that they had read newspaper articles concerning the trial in the interim period after discharge.
Gulf Florida also relies on Cory v. Greyhound Lines, Inc., 257 So.2d 36 (Fla. 1971) and Atlantic Coast Railroad Company v. Turpak, 225 So.2d 340 (Fla. 2nd DCA 1969). However, that reliance is misplaced. Those cases stand for the proposition that the trial court has the power to correct a verdict where the jury has incorrectly apportioned damages, erroneously transposed the amounts in consolidated actions, or has made other clerical errors in rendering the verdict or verdicts. Those cases note that if the jury's verdict is a result of the jury's misconception as to the facts and law involved, or confusion, and does not reflect the true intent of the jury, the court may not correct the verdict. We do not disagree with that law. It just simply isn't applicable to the facts of this case. Sub judice, the case was resubmitted to the jury to render a corrected verdict after the jury had been discharged and the jury members had gone their separate ways and were at least subject to extra-trial influences.
Another error raised by USF&G is the court's instructions to the jury concerning the damages recoverable from USF&G. The court instructed the jury that any damages assessed against Chapman should also be assessed against USF&G and that the elements of Gulf Florida's damages were any unreasonable and excessive costs expended by the contractor, damages caused by delay in completing the contract and the cost of completing the building. USF&G contends that its liability is limited to the cost of completion and the cost of curing any defective work performed by Chapman.
The performance bond issued by USF&G specifically states:
"* * * Whenever Contractor shall be, and declared by Owner to be in default under the Contract, the Owner having performed Owner's obligations thereunder, the Surety may promptly remedy the default, or shall promptly
(1) Complete the Contract in accordance with its terms and conditions, or

*751 (2) Obtain a bid or bids for completing the Contract in accordance with its terms and conditions, and upon determination by Surety of the lowest responsible bidder, or, if the Owner elects, upon determination by the Owner and the Surety jointly of the lowest responsible bidder, arrange for a contract between such bidder and Owner, and make available as Work progresses (even though there should be a default or a succession of defaults under the contract or contracts of completion arranged under this paragraph) sufficient funds to pay the cost of completion less the balance of the contract price; but not exceeding, including other costs and damages for which the Surety may be liable hereunder, the amount set forth in the first paragraph hereof. The term `balance of the contract price' as used in this paragraph, shall mean the total amount payable by Owner to Contractor under the Contract and any amendments thereto, less the amount properly paid by Owner to Contractor." (Emphasis added)
The terms of the bond control the liability of USF&G. We agree that under the above-stated provisions of the bond, the damages recoverable from USF&G are limited to the cost of completion and the cost of curing any defective work performed by Chapman.
The final point we will address is the trial court's alleged error in denying USF&G's motions for discharge on the grounds that a novation occurred and the Statute of Frauds barred Gulf Florida's claim.
USF&G contends that the 1972 contract constituted a novation which extinguished the 1971 contract. USF&G reasons that since the 1972 contract was an entirely new and unambiguous agreement of equal or greater dignity than the 1971 contract, a novation existed as a matter of law. Evans v. Borkowski, 139 So.2d 472 (Fla. 1st DCA 1962). Further, USF&G argues that the statute of frauds, F.S. 725.01, bars Gulf Florida from establishing that USF&G guaranteed the performance of Chapman under the 1972 contract through oral testimony. Therefore USF&G concludes that since its bond is tied to the 1971 contract, it has no liability under the 1972 contract and should be discharged from all liability on its bond as a matter of law.
Whether or not a novation occurred is controlled by the intention of the parties. Sub judice, there was conflicting evidence concerning the intention of the parties to work a novation and the question was properly submitted to the jury. Lakeland Silex Brick Co. v. Jackson & Church Co., 124 Fla. 347, 168 So. 411 (Fla. 1936). There is evidence in the record to support the jury's conclusion that a novation did not occur. Because we affirm the jury's finding that a novation did not occur, we need not reach USF&G's argument concerning the defense of statute of frauds to the 1972 contract.
The other points raised by appellants are rendered moot as a result of our reversal of the jury's verdict.
Accordingly, the case is reversed and remanded for a new trial on damages only.
MILLS and ERVIN, JJ., concur.