**Ronald A. COTE**

v.

**James HOLMES et al.**

**No. 80–106–Appeal.**

Supreme Court of Rhode Island.

April 5, 1983.

---

Lovett & Linder, Ltd., Stephen G. Linder, Mark Sjoberg, Providence, for plaintiff.

John A. Baglini, John A. McQueeney, Providence, for defendants.

## OPINION

KELLEHER, Justice.

This is a Superior Court negligence action in which the plaintiff, Ronald A. Cote (Cote), sought damages of $50,000 for injuries he allegedly received when on March 11, 1975, a motor vehicle operated by the defendant, James Holmes (Holmes), collided with Cote's vehicle. The collision occurred in the town of Tiverton on East Road, when, in Cote's words, Holmes came around a curve like a "shot out of a cannon," crossed over the roadway, bounced off a wall, and, with the rear portion of his vehicle, "smashed" into the front end of Cote's car. Cote is before us on an appeal following the jury's return of a verdict of $1 in his favor and the trial justice's denial of Cote's motion for a new trial.

Cote testified that immediately after the collision he contacted his family physician for treatment of an aching back and continued to see this physician periodically up to January 1976, when the physician moved out of the state. At the time of the collision, Cote, an automobile mechanic by trade, was unemployed and "was collecting" unemployment compensation benefits. These payments terminated in January 1976. Earlier, Cote had consulted with a law firm, which at that time referred him to an orthopedic surgeon who in turn testified in Cote's behalf at a November 1979 jury trial.

Since Holmes had conceded liability, the sole issue for the jury's consideration was the amount of damages. Cote told the jury that in the years following the collision, he held a variety of part-time jobs, including such occupations as cab driver, bartender, and salesman, all of which he was unable to pursue because of the pain in his back and right leg.

During cross-examination of Cote, it was revealed that in early December 1976 he was involved in a second collision while working as a part-time cab driver. Cote's cab was "rear ended." However, Cote insisted that his back complaints were no worse after the second collision. He described his 1976 injuries as neck pain and partial loss of hearing, both of which, he said, were nondisabling. Cote had also instituted suit in regard to the taxicab incident and had filed responses to interrogatories in that litigation which were inconsistent with his direct testimony. Cote's re-

sponses indicated that he was seeking from the defendants in the taxicab litigation compensation for wages lost during the same period for which he was seeking the identical remuneration from Holmes. His responses to the interrogatories filed by Holmes indicated that he was seeking compensation for neck injuries, which responses differed from his in-court testimony in which he was complaining only of his back pain. He also told the jury that his average weekly take-home pay while he worked as an automobile mechanic was between $200 and $300. However, at a pretrial deposition, he had set his weekly pay at $200.

Cote's medical expert informed the jury that when he first examined him in January 1976, Cote complained of pain emanating from his neck and lower back. The surgeon was of the opinion that Cote was suffering from a chronic back strain or irritation, which in turn was related to the Cote-Holmes collision. The expert also informed the jury that in his opinion Cote could perform light work but he could not return to his former full-time position as an automobile mechanic.

In cross-examination the orthopedist testified that the X-rays taken by Cote's former family physician showed that the patient had arthritis of the upper spine near the neck and that there were no objective symptoms of any back injury. The witness had referred Cote to a neurologist, and in the history taken by the neurologist Cote indicated that his complaints concerning back pain were the result of a 1975 work-related injury. The orthopedist was also of the belief that there was a six-and-a-half-month period beginning in early January 1978 in which Cote's disabilities were related to the taxi collision.

In his charge to the jury, the trial justice reminded the panel that Holmes was liable only for those injuries that were the proximate result of the 1975 collision and that Cote must prove by the fair preponderance of the evidence what those injuries were, how long they may have persisted, whether they presently persisted, and whether they would persist in the future. The plaintiff, he admonished, "is only entitled to recover that which he has proven by a fair preponderance of the evidence. If he's failed to do it, you may not award any damages." In concluding his charge, the trial justice once again stressed that plaintiff was entitled to just compensation for those injuries that he had proved were proximately caused by defendant's negligence and that Holmes should only respond to a judgment award that reflected the injuries that were the proximate result of his admitted negligence. Cote's counsel offered no objection to the charge.

When the jury returned with its verdict, the forewoman was asked by the clerk if the jury had agreed on a verdict. After receiving an affirmative response, the clerk then asked whether the jury had found for Cote or for Holmes. The forewoman responded, "The jury finds for the Defendant, Mr. Holmes." After being assured that the forewoman's report represented the unanimous belief of the jury, the trial justice addressed the panel and said:

"[Y]ou will recall that I told you that you must find for the Plaintiff in this case. Liability has been stipulated. Now, if you feel that the Plaintiff has not proven damages to you, then you must find for the Plaintiff and the sum that you must find for is one dollar. But, the Plaintiff must recover in this instance. * * * The only issue before you is how much damages."

He emphasized that the verdict could not be for defendant.

When the jury signified that it desired to reconsider its verdict, it returned to the jury room. Cote's counsel objected to the trial justice's actions, arguing that the jury should have been discharged and the verdict as received recorded. Counsel was of the belief that he would then file a motion for a new trial, which motion would be granted automatically because of the jury's misconception of the charge and the nature of the evidence. The trial justice disagreed with counsel's reasoning and pointed out that

counsel was free to file a motion for a new trial which would test the sufficiency of the jury's findings.

After a recess, the jury returned with a verdict for Cote in the amount of $1. Judgment was entered on the verdict, and in due course Cote's motion for a new trial was heard and denied by the trial justice.

On appeal Cote faults the trial justice for his refusal to accept the initial report of the forewoman and his issuance of the supplementary instructions. Cote also complains about the denial of his motion for a new trial.

█ In the past we have observed that the handling of the extraordinary events that may occur during a trial is left to the sound discretion of the trial justice. *State v. Byrnes,* R.I., 433 A.2d 658 (1981); *Webbier v. Thoroughbred Racing Protective Bureau, Inc.,* 105 R.I. 605, 254 A.2d 285 (1969). Here, the action of the trial justice in his remarks to the forewoman and to the jury, and in his requiring the jury to resume deliberations, was not an abuse of discretion but rather was a commendable manifestation of his inherent power to manage the trial and assist the jury in the proper discharge of its responsibilities. *Reilly v. Straub,* 282 N.W.2d 688, 696 (Iowa 1979). The trial justice could well have decided to order a mistrial and required the litigants to undergo the delay and bear the expenses involved in the retrial of what was a one-issue dispute. However, once it became clear to the trial justice that the jury had misconceived its task, it was not only his right but also his duty to take corrective measures. *Vatistas v. Hickens,* 121 N.H. 455, 456, 431 A.2d 121, 123 (1981).

When the jury first returned with a verdict at 3:17 p.m. and the forewoman announced a finding for Mr. Holmes, it was obvious that there had been some type of communication gap between the trial justice and the jury. Instead of accepting the jury's verdict, the trial justice reminded the panel that it had to find for Cote; but if it believed he had not proved damages, it must find for Cote and award him the sum of $1. He also stressed that the verdict must be for Cote, "but it is your decision as to what sum." When he asked the forewoman if the jury might wish to reconsider its verdict in the light of the supplemental instructions, he received an affirmative answer. The trial justice's response to the turn of events which ensued following the forewoman's announcement for Holmes was an apt solution to one of those extraordinary developments that may unexpectedly occur in any given trial.

█ The trial justice's denial of Cote's motion for a new trial merits little comment. The trial justice, as he must, exercised his independent judgment in examining the record. He considered all the material evidence on the question of damages and passed on the credibility of the witnesses. The trial justice referred to the fact that Cote's testimony was severely impeached several times and that he was not "overly impressed with the doctor." He concluded his consideration of the new-trial motion by saying:

"I do not find that the verdict of this jury is against the evidence that they heard, against the law * * * as contained in my instructions, nor do I find that it is against the law or the weight of the evidence."

We find no basis whatsoever for disagreeing with his conclusions.

The plaintiff's appeal is denied and dismissed, the judgment appealed from is affirmed, and the case is remanded to the Superior Court.