NEWPORT FISHERMAN'S
SUPPLY CO., INC.

v.

Robert E. DERECKTOR et al.

v.

Edmond SCHILLER.

No. 88–515–A.

Supreme Court of Rhode Island.

Feb. 13, 1990.

Joseph A. Kelly, Keith B. Kyle, Carroll, Kelly & Murphy, and Robert Rahill, Rahill, Rahill & Hanley Law Associates, Providence, Bruce H. Cox, East Providence, for plaintiff.

James T. Murphy, Thomas R. Bender, Providence, for defendant.

## OPINION

SHEA, Justice.

The appeal in this case involves a jury verdict rendered in a civil case in the Superior Court. The underlying dispute resulted from the termination of a joint venture agreement between the plaintiff Newport Fisherman's Supply Co., Inc. (Fisherman's Supply), and the defendant, Robert E. Derecktor (Derecktor).

On June 16, 1988, the jury made the following findings on the interrogatory and verdict forms supplied to them by the trial justice:

"COUNT IV: (Wrongful Conduct of the Defendants):

Interrogatory #1:

Do you find that the defendants willfully refused to consent to lease the so-called remainder of Building 42 with the intent to cause the failure of the joint venture?

(XX) YES ( ) NO

## VERDICT

Do you find for the plaintiff or for the defendant?

(XX) PLAINTIFF ( ) DEFENDANT

If you find for the plaintiff, what amount of compensatory damages do you award?

$255,000.00

"COUNT V: (The Conspiracy Count):

Interrogatory #1:

Do you find that the defendants conspired to force the plaintiff from the joint venture for the benefit of Robert E. Derecktor and/or Robert E. Derecktor of R.I., Inc.?

(XX) YES ( ) NO

Interrogatory #2:

Do you find that the conspiracy amounted to a willfull, intentional and a malicious plan to cause economic injury and/or damage to the plaintiff?

( ) YES (XX) NO

## VERDICT

Do you find for the plaintiff or for the defendant?

(XX) PLAINTIFF ( ) DEFENDANT

If you find for the plaintiff, what amount of compensatory damages do you award?

$255,000.00 "

The interrogatory and verdict form also contained the following instructions: "If you award compensatory damages on one or more of the above counts, said amount must be the same. Do not divide your total award for compensatory damages. Enter the total award for compensatory damages in each of the above counts where you award such compensatory damages."

Prior to deliberations the trial justice instructed the jurors verbally that if they awarded damages, the amount entered for each count must be the same, whether they found for plaintiff under two counts or under all counts.

After the verdict was returned, the trial justice read in detail both the answers to the interrogatories and the verdict. The trial justice then stated: "I assume ladies and gentlemen that you agree with me that that is a correct reading of what you did." No exceptions were made by any member of the jury. After directing the clerk to "compute the interest on $255,000," the trial justice then discharged the jury and excused counsel.

There appears to be no dispute that immediately after the jury was discharged, the entire jury immediately spoke to the trial justice's sheriff and requested to see the trial justice. At that point the trial justice left the bench and met the jury in his chambers. The jurors informed the trial justice that they had "screwed it up" and that they had intended to award plaintiff $510,000.

The trial justice then placed what had happened on the record. Over defense counsel's objection, plaintiff's counsel orally moved to have judgment entered in the amount of $510,000. The trial justice deferred his ruling pending submission of memoranda.

On June 24, 1988, the court reassembled the jurors and again placed on the record the events following their discharge eight days earlier. The former jurors were sworn in and questioned about the amount of damages they would award and each answered "$510,000."

Subsequently the trial justice heard and granted plaintiff's motion for entry of judgment in the amount of $510,000 plus interest and costs on August 29, 1988. Judgment was entered in accordance with plaintiff's motion on September 9, 1988.

■■ On appeal Derecktor argues that the trial justice erred in granting plaintiff's motion because it is well settled that once the jury was discharged, the jurors cannot be brought together to find another verdict or to amend one already rendered. *Abraham v. Superior Court*, 50 R.I. 207, 146 A. 617 (1929). In *Abraham* six cases arising from an auto accident were consolidated and tried together. The jury returned a verdict in each case for defendant. The following day one of the plaintiffs moved that two of the verdicts be corrected. The jurors were then reconvened the next day, and judgment was entered for that plaintiff in the amount of $311.72. On appeal this court overturned the verdicts, reasoning that the jury had no right to render second verdicts. Further we noted that a new trial appeared to be the appropriate remedy due to the fact that the jury had been confused because of the joinder of many claims.

Derecktor also cites *Roberts v. Kettelle*, 116 R.I. 283, 356 A.2d 207 (1976), for the proposition that the trial justice erred when he entered judgment for $510,000. In *Roberts* the plaintiffs were awarded by the jury $40,000 in a wrongful death action and judgments were entered accordingly. The plaintiffs subsequently filed a motion for relief accompanied by affidavits from each of the jurors indicating that he or she had intended to award $80,000. The trial justice denied the motion, and we affirmed, reasoning:

"This court has unwaveringly adhered to the position that jurors' affidavits when offered to prove what any of the jurors may have done either before or during their deliberations cannot be used to impeach their verdict. * * * The rule is solidly grounded on the premise that admission of such affidavits undermines

the stability of jury verdicts and corrodes the purity of trials by jury. * * * Every party who was dissatisfied with a jury verdict would feel able at least to attempt to effect a revision thereof. Such a situation leaves jurors open to harassment and intimidation long after they have been discharged from their official duties and thus after they are outside the watchful eye of the court." *Id.* at 299–300, 356 A.2d at 217.

The purpose of the rule articulated in *Abraham* and *Roberts* is to eliminate extratrial influences from infecting the sanctity of the jury's secrecy between the time of discharge and reassembly. "The public interest requires that litigation be terminated and to that end the jury verdict should possess a conclusiveness that will preserve the stability of the jury trial as an instrument for doing substantial justice." *Roberts v. Kettelle*, 116 R.I. at 300, 356 A.2d at 217. Many other jurisdictions have also recognized the rule that after a jury has returned its verdict and has been discharged and separated, it cannot be recalled to alter or amend a verdict. *See Preferred Risk Mutual Ins. Co. v. Stuart*, 395 So.2d 980 (Ala.1981); *Ferris v. Hotel Pick Arms, Inc.*, 147 Conn. 72, 157 A.2d 106 (1959); *Kirkland v. Robbins*, 385 So.2d 694 (Fla. Dist. Ct.App.1980); *United States Fidelity & Guaranty Co. v. Gulf Florida Development Corp.*, 365 So.2d 748 (Fla. Dist. Ct.App.1978).

While Derecktor argues that *Abraham* and *Roberts* are controlling in this case, there are a number of significant factual differences. Unlike *Abraham* and *Roberts*, where a party to the case sought to have the jury reconvened in this case the jury reconvened sua sponte. The record also indicates that neither plaintiff nor defendant had any contact with the jurors before they sought to confer with the trial justice. In fact no evidence was disclosed that would suggest that the discharged jury received any extratrial influence either when they conferred with the trial justice in chambers immediately following discharge or when they were reconvened by the court on June 24, 1988. Moreover, unlike *Abraham* or *Roberts*, the jury was

for all practical purposes still within the control of the trial justice and immediately notified the court of their mistake. In those instances where it is evident that, though discharged, the jury remained an undispersed unit within the control of the court, the rationale of the rule set forth in *Abraham* is not undermined and may be subject to exception. *See Masters v. State*, 344 So.2d 616, 620–21 (Fla. Dist. Ct.App. 1977). We are of the opinion that in this case there was no danger of intimidation or improper influence present.

■ This court has recognized that the handling of extraordinary events that may occur during a trial is left to the sound discretion of the trial justice. *Cote v. Holmes*, 457 A.2d 1355 (R.I.1983); *State v. Byrnes*, 433 A.2d 658 (R.I.1981). Once it is clear to the trial justice that the jury has misconceived its task, it is his or her duty to take corrective measures. 457 A.2d at 1358. In the case at hand the trial justice acted immediately to correct the error after being informed by the jury that it had mistakenly completed the verdict and interrogatory sheets. Although the general rule is that a jury may not be reconvened, we believe the trial justice did not abuse his discretion, but rather sought to achieve a just result under these peculiar circumstances.

For the foregoing reasons, the defendant's appeal is denied and dismissed, the judgment appealed from is affirmed, and the papers of the case are remanded to the Superior Court.

FAY, C.J., and KELLEHER, WEISBERGER, MURRAY and SHEA, JJ., concur.