707 So.2d 1119 (1998)
FEDERAL INSURANCE COMPANY and McMerit Construction Company, n/k/a Mccarthy Construction Company, Petitioners,
v.
The SOUTHWEST FLORIDA RETIREMENT CENTER, INC., d/b/a The Village on the Isle, Respondent.
FIREMEN'S INSURANCE COMPANY OF NEWARK, NEW JERSEY, et al., Petitioners,
v.
The SOUTHWEST FLORIDA RETIREMENT CENTER INC., d/b/a The Village on the Isle, Respondent.
Nos. 89574, 89576.
Supreme Court of Florida.
February 12, 1998.
Rehearing Denied April 2, 1998.
Sylvia H. Walbolt, J. Bert Grandoff and William Cary Wright of Cartlon, Fields, Ward, Emmanuel, Smith & Cutler, Tampa, for Petitioner Firemen's Insurance Company of Newark.
Philip D. Parrish of Stephens, Lynn, Klein & McNicholas, P.A., Miami, for Petitioner Cotton States Mutual Insurance Company.
Thomas F. Munro, II, and John R. Hamilton of Foley & Lardner, West Palm Beach, for Petitioners Federal Insurance Company and McCarthy Construction Company.
David E. Gurley and Anthony S. Cabrera of Norton, Gurley, Hammersley & Lopez, P.A., Sarasota, for Respondent Southwest Florida Retirement Center, Inc.
WELLS, Justice.
We have for review Southwest Florida Retirement Center v. Federal Insurance Co., 682 So.2d 1130 (Fla. 2d DCA 1996), which expressly and directly conflicts with School Board of Volusia County v. Fidelity Co. of Maryland, 468 So.2d 431 (Fla. 5th DCA 1985). We have jurisdiction pursuant to article V, section 3(b)(3) of the Florida Constitution.
In 1981, Southwest Florida Retirement Center, Inc., (Southwest) contracted with McMerit Construction Company (general contractor), n/k/a McCarthy Construction Company, for the construction of a retirement center. Federal Insurance Company (Federal) issued a performance bond naming *1120 Southwest and Barnett Banks Trust Company as dual obligees.[1] The performance bond, a standard form bond issued by the American Institute of Architects,[2] incorporated by reference the construction contract and guaranteed faithful performance of the construction contract according to its terms and conditions. Construction of the retirement center was completed in 1984. In 1994, Southwest sued the general contractor and Federal based on allegations that in 1993, while investigating water damage to the facility caused by a storm, Southwest discovered latent defects in the project that constituted a breach of an express warranty provided in the construction contract.[3] Southwest's claim against Federal alleged a breach of the performance bond for failure to cure the general contractor's warranty violation.
The trial court granted Federal's motion for a judgment on the pleadings, ruling that under section 95.11(2)(b), Florida Statutes (1981), any claim arising under the performance bond was time-barred.[4] On appeal, the Second District reversed. The district court first noted that all parties agreed that section 95.11(2)(b), Florida Statutes (1981), pertaining to causes of action based on written contracts, was the applicable statute of limitations. Southwest Florida Retirement Ctr., 682 So.2d at 1131. The district court then stated that the issue before it concerned the accrual date of the statute of limitations on a suit against a payment and performance bond surety when the owner alleges latent defects constituting a breach of warranty by the general contractor. Id. The analysis portion of the district court's opinion begins with the premise that "by incorporating the construction contract into the bond, the surety's liability becomes co-extensive with that of the general contractor and that a timely contractual claim against the general contractor would result in a valid claim against the surety's bond." Id. at 1132 (footnote omitted). The district court then concluded that because the contracts were coextensive, "the limitations period for an action against the surety did not begin to run until discovery of the latent defects constituting the breach of warranty." Id.
The district court found that the trial court relied on School Board of Volusia County v. Fidelity Co. of Maryland, 468 So.2d 431 (Fla. 5th DCA 1985), and that the Fifth District apparently relied upon the lack of tolling language in section 95.11(2)(b), to hold that the five-year limitation specified therein is an absolute bar in an action against a surety on a payment bond for latent defects that the owner discovers beyond the five-year period beginning with the acceptance of completion of the construction. The district court concluded that the Fifth District's holding was in error.
Judge Blue wrote in his dissent:
The majority opinion makes the claim against the bonding company actionable more than ten years after completion of the bonded construction. It does this by explaining that the cause of action does not accrue until the latent defect is discovered and only then does the five-year statute of limitations begin to run. This analysis purely and simply attaches a tolling period to the statute of limitations applicable to the bond. It is the tolling provision in section 95.11(3)(c) which permits a cause of action beyond the four-year limitations period in this section. To make the latent defects actionable against the bonding company requires imposing a tolling period within section 95.11(2)(b), which School Board of Volusia County and this court have held is a legislative determination. The majority opinion also extends the liability on the bond by implication beyond the terms of the bond contract. This additional burden is in derogation of the analysis *1121 provided by our supreme court in [American Home Assurance Co. v. Larkin General Hospital, 593 So.2d 195 (Fla. 1992)].
Id. at 1136.
We begin our analysis with the threshold issue of whether Federal is liable on its performance bond for latent defects in the retirement center discovered after substantial completion. Obviously, if there is no liability for latent defects then the statute of limitations would be irrelevant. Federal argues that our decision in American Home Assurance Co. v. Larkin General Hospital, 593 So.2d 195 (Fla.1992), should be extended to foreclose any liability of a performance surety for latent defects discovered after substantial completion. In Larkin, the issue before us was whether a surety on a performance bond could be held liable for consequential delay damages caused by the general contractor's default. We held that a surety could not be held liable for delay damages due to the contractor's default unless the bond specifically provided coverage for delay damages.
We decline to extend Larkin beyond claims for delay damages. We point out that in Larkin we agreed with the First District's decision in United States Fidelity & Guaranty Co. v. Gulf Florida Development Corp., 365 So.2d 748 (Fla. 1st DCA 1978). In Gulf Florida, while the district court agreed with the surety's contention that its performance bond did not include coverage for delay damages, the district court specifically stated:
The terms of the bond control the liability of USF & G. We agree that under the above-stated provisions of the bond, the damages recoverable from USF & G are limited to the cost of completion and the cost of curing any defective work performed by [the general contractor].
Id. at 751. As in Gulf Florida and Larkin, Federal's performance bond guaranteed completion of the construction contract according to its terms and conditions. The intent of this guarantee is to have the financial responsibility of the surety standing behind the general contractor's completion obligations. We conclude that Federal's promise that the project would be completed according to the terms and conditions of the construction contract means that Federal would be liable for defective work performed by the general contractor upon the general contractor's default. This liability is not dependent upon whether the defect was discovered before or after substantial completion. At oral argument, Federal conceded that its performance bond would cover patent defects, subject to affirmative defenses of acceptance and waiver. We find no logical reason to distinguish between patent defects and latent defects in respect to the coverage of the performance bond. We reject the decision of the Fifth District in Florida Board of Regents v. Fidelity & Deposit Co. of Maryland, 416 So.2d 30 (Fla. 5th DCA 1982), to the extent that the decision holds that when a construction contract is substantially completed, the surety is relieved of any further responsibility.
As to the statute of limitations for latent defects, we agree with the stipulation of the parties and with the district court that the applicable statute of limitations is the five-year period provided in section 95.11(2)(b), Florida Statutes (1981). However, we do not agree with the district court's majority that the five-year period would begin to accrue at a time other than acceptance of the construction. On this issue we agree with Judge Blue's dissent and quash the majority's decision. We expressly hold that section 95.11(2)(b), Florida Statutes (1981), as it applies to an action on a performance bond, accrues on the date of acceptance of the project as having been completed according to terms and conditions set out in the construction contract.[5] We approve the decision of the Fifth District in Volusia County, in which the court stated:

*1122 There is no comparable deferral of accrual of a cause of action for latent undiscovered defects in section 95.11(2)(b), unlike the four year statute of limitations found in section 95.11(3)(c).... This results in the anomaly of being able to hold an "obligee" liable under a performance bond at a time the suit against the surety has been time-barred. If this is not the intent of the Legislature, then it should make the necessary statutory changes. We cannot reach any other conclusion unless we depart from the clear wording of the statutes and the substantial precedent interpreting them.
Volusia County, 468 So.2d at 432-33 (footnote omitted).
As the Fifth District pointed out, section 95.11(2)(b), Florida Statutes (1981), makes no reference to a discovery rule for latent defects. Using the principle of statutory construction expressio unius est exclusio alterius, we conclude that the absence of such express language in section 95.11(2)(b), Florida Statutes (1981), is clear evidence that the legislature did not intend to provide a discovery rule in section 95.11(2)(b), Florida Statutes (1981). To conclude otherwise would require us to write into section 95.11(2)(b), Florida Statutes (1981), a discovery rule when the legislature has not. As we stated in Fulton County Administrator v. Sullivan, 22 Fla. L. Weekly S578-79, ___ So.2d ___ (Fla. Sept. 25, 1997), when construing statutes of limitations, courts generally will not write in exceptions when the legislature has not. Because Southwest filed its action more than five years after acceptance of the project, we hold that the trial court correctly entered a judgment on the pleadings in favor of Federal.[6] As Judge Sharp stated in Volusia County, any change in this result is a matter for legislative consideration.
Accordingly, we quash the decision below, approve Volusia County, disapprove Florida Board of Regents to the extent that it conflicts with this opinion, and remand to the district court with instructions to affirm the trial court judgment.
It is so ordered.
KOGAN, C.J., OVERTON, SHAW and HARDING, JJ., and GRIMES, Senior Justice, concur.
ANSTEAD, J., recused.
NOTES
[1] Firemen's Insurance Company of Newark, Great American Insurance Companies, and Cotton States Mutual Insurance Company issued performance bonds to various subcontractors, naming the general contractor as obligee.
[2] AIA Document A311 (1970).
[3] Upon being sued by Southwest, the general contractor filed a third-party action against its subcontractors and their sureties alleging pass-through claims relating to the subcontractors' performance and responsibility for the alleged latent defects.
[4] For this same reason, the trial court dismissed the general contractor's claims against the subcontractors' sureties.
[5] Southwest claimed in its brief and at oral argument that the court below misdirected the focus of the case. Southwest argued that its cause of action was based on Federal's breach of its obligation to cure the general contractor's default. Southwest reasoned that Federal's obligation to cure was continuing and that because Federal was not called upon to cure the default until January 1994, the statute of limitations did not begin to run against Federal until January 1994. Of course, the general contractor's default was a failure to cure latent defects which constituted a breach of an express warranty. We do not agree with Southwest's argument. Regardless of the "spin" put upon it, the statute of limitations for Federal's obligation in respect to latent defects accrues from the acceptance of the construction project.
[6] This, of course, means that judgment in favor of the subcontractors' sureties was also correct.